Milton Shalleck, J.
There has grown up in this court and its predecessors a countenanced practice of defendants’ bringing on motions “ to controvert ” search warrants. Its development, I am told, dates from a time when none of the older members of this court had yet graced its Bench. But historically the practice has received the undeviating approbation of those Judges assigned primarily to the trial of “ Gamblers” cases, in which the attack on search warrants has been most prolific. The court, then, has generally given, and still does give, reciprocally perfunctory treatment to section 807 of the Code of Criminal Procedure, as have defendants ’ attorneys who brought such motions.
Some doubt has cropped up more recently in the minds of the moving attorneys as to the legal basis for a ‘ ‘ motion to controvert and in accordance with the law’s penchant for conservatism, they have combined such a motion with one “ to suppress ” — just to be on the safe side. Sometimes an applicant, hopeful that semantics plays a role in a Judge’s decision, labels such combined motion as 1 ‘ notice of motion to controvert *36 and suppress ” in the title, and in the notice itself prays “ for an order quashing a search warrant and suppressing all evidence seized thereunder”, as in the matter now before me. However, whether it be to “ controvert ” or to “ quash ” or to “vacate” (as it appears on other occasions) the end result must be dictated by what the Code of Criminal Procedure provides.[1] For the method of a motion is procedural and not substantive. A procedural error, however, may sometimes result in substantive injustice.
I wish to dispel any initial reaction that I intend hereby to deprive a defendant of his substantive rights by being hyper-technical. On the contrary, by seeking to find the proper method, I wish to fortify and solidify those rights.
This court is beset by volume; and in the constraint of getting through its vast amount of work, there is apt to be lost a defendant’s right which may effect his loss of liberty. So, if error evolves herefrom, I prefer it to be on the side of the puristic approach to the law, rather than see the error perpetuated by sloven neglect due only to the staggering amount of judicial business. Justice should not be so speeded as to impede a slower, more deliberate, though not delayed, truer justice.[2]
Section 807 of the Code of Criminal Procedure is succinct. It deals with, but does not authorize, the controverting of a search warrant. ‘ ‘ If the grounds on which the warrant was issued be controverted,” it says, “ the judge, justice or magistrate[3] must take testimony in relation thereto.” I know of no instance in which the mandate of the statute to “ take testimony ” has not been obeyed. But has it been in the unimpeachable kind of proceeding?
If a motion were brought solely to “ controvert ” a warrant, a District Attorney may well be advised to oppose it on the ground that no such proceeding is provided for in the code. “ The Code of Criminal Procedure establishes the practice in all criminal cases and the authority for the orders and judgments of the courts. Unless we find there some justification for the above order it does not exist.” (People ex rel. Hirschberg v. Orange County Ct., 271 N. Y. 151, 155; People v. Redmond, 225 N. Y. 206, 208; People v. Grout, No. 1, 166 App. Div. 220, 221.)
*37 For the code “ provides a system of practice and procedure, extensive and complete in itself, governing the procedure in all criminal cases ” (Grout No. 1, supra, p. 221, italics supplied). “ It is the Bible of all legal operative methods which guide both court and counsel” (People v. Rockwell, 38 Misc 2d 645, 649).
Section 807 of the Code of Criminal Procedure is simply a directive to the court to take testimony, ‘ ‘ If the grounds on which the warrant was issued be controverted”. It does not authorize a motion to controvert. Nor does it lay down any limitation as to the grounds for the attack on the warrant — legal or factual. A precise reading of its language would dictate that the attack can encompass the full gamut of law and facts. The latter, on which testimony is directed to be taken, may well give rise to the questioning of the warrant on legal grounds. Testimony itself may conceivably be received only on the facts.
But how is this properly to be brought before the court? The answer is found in title II-B of part VI of the code, more particularly section 813-c (added by L. 1962, ch. 954, § 1). This section was fashioned after subdivision (e) of rule 41 of the Federal Rules of Criminal Procedure entitled, “ Motion for Return of Property and to Suppress Evidence ”. Both section 813-c and subdivision (e) of rule 41 respectively require the court to hear evidence, on “ any issue of fact necessary ” for the determination “ of the motion ” (italics supplied). And that motion must be for the return of seized property or for the suppression thereof as therein alone provided. In section 813-c there is no mention of any controverting of an unlawful warrant; in subdivision (e) of rule 41 a specific ground, which might give rise to a controverting of the warrant: that it “is insufficient on its face ”, is clearly spelled out (par. [2]). But even in Federal practice the motion is “ for the return of the property and to suppress ”. If the New York practice is to be at least as efficacious as the Federal practice, we must read section 807 as being encompassed within the ambit of section 813-c and conclude that “ A person claiming to be aggrieved by an unlawful search and seizure ’ ’ may bring a motion “for the return of such property or for the suppression of its use as evidence ”, and in such motion the aggrieved party may challenge the grounds, legal and factual, on which the warrant was issued — a meshing of sections which provides a valid end.
By doing that, the statute’s commandment that the Code of Criminal Procedure alone governs procedural matters has been obeyed, and at the same time all rights of defendants are preserved. In fact they are fortified against any attack for procedural infirmity, as happened in Matter of Police Benevolent *38 Assn. v. Gagliardi (9 A D 2d 929). In that case a unanimous court correctly held: “ We do not find in the Code of Criminal Procedure any provision for a proceeding to vacate a search warrant ’ ’ and dismissed an appeal from an order denying a motion therefor. But it did deprive, through a procedural error, a very substantial right to which the defendant was entitled.
Criticism of this Second Department holding came from the Third Department (People v. Politano, 17 A D 2d 503) wherein a conviction was reversed and an indictment dismissed ‘ ‘ on the law and the facts ”. The court held factually that there was no probable cause for the issuance of the warrant initially. There was no need to inject its further, and I say deferentially, its illogical conclusion, that a motion to controvert is permitted. After stating that “A procedural problem besets the case” (p. 507), the court argues (p. 508) that “ the failure of the statute to provide an effective procedure to reach the question is not a bar ” claiming that “ the court is deemed possessed of sufficient inherent power ” to allow such a motion regardless of statute.
It based its conclusion on People v. Glen (173 N. Y. 395) which concerned itself with the dismissal of an indictment. But that case held that insofar as the code “ is intended to regulate only matters of procedure which involve no constitutional rights, it is valid and must be obeyed by the courts ’ ’ for 1 ‘ Such matters are now regulated by the provisions of the Code of Criminal Procedure, and however inconvenient, or even oppressive they may appear to be in specific cases, the courts must apply them, as best they can, for they embody the commands of the law-making power in matters wherein its fiat is supreme and final ” (p. 400).
The reasoning of Politano is fallacious in that the court attempted there to convert an admitted 1 ‘ procedural problem ’ ’ (p. 507) into one “Where constitutional rights are involved” (p. 508); and it went beyond the code itself. By the conclusion here reached, all problem is averted; the matter remains, as it should, procedural; and the constitutional rights of the defendants are in no way thereby affected. It was for that reason I rejected defendants’ “motion to controvert” and permitted full testimony by the defendants as to the legal and factual unsoundness of the warrant under that part of their motion labelled “ to suppress ”.
Some legal iconoclasts may raise their sage eyebrows with movements of adverse critical appraisal, shaking their heads at the same time, in mental — or even vocal — wonderment at why so much time is spent in arriving at my conclusion. They *39 would analogize that the elasticity of civil law practice should pertain to the criminal law. But in this attempt to interchange the practice they are mistaken.
In civil law, the courts deal only with money, property, economic relationship or status. In rare instances a contempt or a body execution might result in minor, short-time restriction of personal action. Niceties of the Civil Practice Act have been reduced to a minimum; and with the CPLB soon to govern civil matters, the obvious will be more the rule and method will be relegated to a recessive concept only.
Not so in criminal law and practice (People v. Redmond, supra; cf. People v. Grout, No. 1, supra, p. 222). It is simple when the rules of the code are religiously followed. One step out of the permitted way and the liberty of a person may be curtailed for a long time; and the hope of Sir William Schwenk Gilbert that the punishment should fit the crime might remain only Mikado’s song and not be a reality (see People v. Adams, 12 N Y 2d 417). The criminal law deals with human, moral and social relationships which may result in long incarceration for the violations of ethical standards. A quarrel over method of procedure can, as here, bring about harmful conflict (viz.: Politano and Gagliardi, supra). In the one case there was no remedy; in the other, equally wrong, a remedy was provided which was contrary to the Code of Criminal Procedure. It is for reasons like this that motions coram nobis are almost as numerous as the changes of color of a chameleon walking over a multicolored cloth, or of the assignments of the Judges of this court. While the latter might not be able to be alleviated, the former can be lessened by reconciling conflicts as I have attempted to do here. That end justifies the time.
The second point — this, raised by the defendants — is a constitutional attack on the search warrant itself. The basis is the claim that it directs a search of an individual and not of a place. The argument is made that both article I (§12, first par.) of the New York State Constitution and the Fourth Amendment to the United States Constitution (both of identical verbiage) preclude the issuance of a warrant to search the person, especially one ‘1 general in scope”.
The provisions read: “ The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seised.” (Emphasis supplied.)
*40 Defendants cite Giordenello v. United States (357 U. S. 480) to support their claim that these provisions apply both “ to arrest as well as search warrants ’ There is no disagreement with this claim. But the basic holding in that case was that the warrant was issued without probable cause; and the weight to be given here is questionable. It was a “ procedural path ” in that case only (p. 484).
Defendants point out, too, that the last portion of section 792 of the Code of Criminal Procedure reads: “ The property described in this section, or any part thereof, may be seized from any place where such property may be located or from the person or possession or control of any person who shall be found to have such property in his possession or under his control ” and concludes therefrom, that this language “ may be misconstrued to sanction search warrants issued solely against the person ’ ’. With acknowledgment of the argument thus made, I construe that section to mean that a search of a defendant on a public street is proper. And it does no violence to either the Federal or State constitutional provisions. These provisions ban warrants issued without probable cause, unsupported by oath. Then two conjunctions follow: “ and particularly describing the place to be searched ” (if it is a place) and, if it is a person, the warrant must also particularly describe “ [, and] the persons or things to be seized ”. These are separate and distinct concepts. I believe that section 792 of the code implements the intent of these constitutional provisions in their different intendments — one apart from the other.
The cases cited by the defendants are not to the contrary. Trupiano v. United States (334 U. S. 699) involved an arrest without a warrant. The court held that “ the presence or absence of an arrestee at the exact time and place of a foreseeable and anticipated seizure does not determine the validity of that seizure if it occurs without a warrant ’ ’. It held, of course, that ‘6 A search warrant must describe with particularity the place to be searched and the things to be seized ” (p. 710). But the case does not impinge on the holding here, since it had to be a place only involved therein, and not a person. It related to an alleged still which was not readily portable.
United States v. Hinton (219 F. 2d 324) likewise concerned only a place and not a person. In that case an apartment was involved and the court declared that “ the Fourth Amendment’s requirement that a specific ‘ place ’ be described when applied to dwellings refers to a single dwelling unit” and not to an entire building, so that the officer is “ able from the ‘ particular ’ *41 description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed. This requirement may be satisfied by giving the address of the building and naming the person whose apartment is to be searched ” (p. 326, emphasis supplied).
I do not intend to convey the idea that there is a carte blanche to grant a warrant to search a person alone in every instance. Certain additional safeguards there must be, especially since the warrant is intended more for an individual than a place. It cannot give abstraction as to place in order to allow a search of an individual anywhere. On the contrary, the warrant, to protect a person’s constitutional basic rights, should specifically limit the area in which the person is to be searched. That will obviate the label of being a “ general warrant ” and thus void. The search itself should actually be made within the permitted area. Also, the supporting “oath” should state specifically or show clearly by deduction the reasons for needing such a warrant; and if there are any observations made as the source of the affidavit of reasonable cause, those observations should have been made also within the area involved.
Does warrant number 756 here involved come within the advanced criteria? I think it does. As to area limitations, the place is described particularly as the shoeshine parlor at 298 West 138th Street, New York, New York. The supporting oath (affidavit) speaks not only of the informant’s activities at that address, but the petitioning police officer made observations “in front of and/or vicinity of 298 West 138th Street, shoe shine parlor, New York ”. The search itself, according to the testimony before me, was made within the area limited by the affidavit and warrant. As for the necessity for the warrant against the persons named or described (the defendants) the Judge who issued the warrant may well have been advised from the facts presented that this kind of personal warrant should issue. I have no reason to question such interpretation.
On this score, too, the warrant should be upheld. But the third point raised presents a different aspect to the warrant. The defendants have submitted a substantial and provocative brief — apparently so convincing to the District Attorney that no opposing brief was submitted for the People. This point is based on the lack of probable cause in that there was no “ ‘ reasonable ground for belief of guilt ’ ” (Brinegar v. United States, 338 U. S. 160, 175). Suspicious activities do not in themselves equate with probable cause (People v. Moore, 11 N Y 2d 271).
*42 The affidavit initially is based upon an informer’s statement to the police officer that he made two policy bets at the named place and noticed “ numerous slips of paper bearing policy notations on them” passed among several of the defendants. (There is nothing to justify the expertness of the informant or the essential facts of the alleged passing of slips.) The police officer saw a considerable number of people talk to the defendants at various times (conversations which he did not hear) and hand either money or slips of paper, or both, to them; after each of which alleged occurrences the defendants disappeared into the premises and emerged soon thereafter. This is apparently a set police pattern of describing alleged policy activities. I have read it so many times in affidavits that I can repeat almost the exact language from memory. Trying to stamp out gambling-in this way is a very frustrating job for the law enforcer! Since the last alleged bet was made by the informant on the day on which the patrolman states he was at his observation, it is quite clear that if it were so contrived between the patrolman and the informant, some additional corroboration should have been given by the informant, as a necessary part of the alleged crime. The officer does not advance that, but he bottoms the reliability of the informant only upon one prior case of arrest and conviction — a rather dubious reliance if in fact there was a more substantial transaction at hand (the alleged bet of March 14, 1963).
I am well aware of the difficulties the Police Department has to carry out its assigned task in the Legislature’s declared illegal field of gambling. To enforce any law that has such widespread opposition, that has such tongue-in-cheek inconsistencies in its application of moral and ethical standards, that has historically corrupted people in high places, that preys, for the most part, on those who can afford bets least but who, because of their status, are enticed more readily to make a ‘ ‘ killing ’ ’, is indeed a super-Herculean job. Ruse and device are used by the gamblers to subvert the law, and as protective defenses by law-enforcement agencies to make arrests in upholding the laws.
How is the court to determine where the truth lies on a hearing attacking a warrant? The defendant must prove his case out of the very mouth of the officer involved — a most unsatisfactory trial. How can it tell where the one or the other’s device starts and ends, if indeed it is employed at all? These nebulous machinations must give way to the basic right of every defendant to be presumed innocent and to the constitutional mandate that to be guilty, a defendant must be proved so beyond a reasonable doubt. The fact that this is not the trial-in-chief but only a *43 motion, is not the sole criterion. These ideas pervade the motion and weigh heavily in considering the question of probable cause. If in the process of upholding those fundamental rights a gambler escapes the most valiant efforts of the police to snare a guilty one, it is indeed unfortunate. But the foundation of a person’s rights, which transcends gambling, is fortified and strengthened. And to the latter, I believe all persons subscribe, despite their disagreement as to whether or not gambling is good or bad.
The officer states that the place is a shoeshine parlor. Anyone who has lived in New York for any length of time knows with what frequency such a place is used by innumerable passers-by going in for a shine (which takes but a few minutes), emerging, their places to be taken by others who desire their shoes shined. The description of “ John Doe ”, “ Harry Hoe ” and “ Bichard Boe ” — three of these defendants — may well fit thousands of persons other than these defendants; and their connection with the place in question is not in any way asserted, nor their presence for legitimate reasons negated.
In this respect the two named defendants, Frazier and Copeland, are in a different category. Their identifying names, the observation by the officer himself, the fact that he knew them from prior policy violations, and the other subtleties and nuances of the facts set out in the affidavit would, I believe, preclude the same kind of treatment accorded the fictitious “ Does ”, “ Hoes ” and “ Boes ”. As to the latter, I have concluded that there was more suspicion and surmise than probable cause. Not so as to Frazier and Copeland.
For these reasons, therefore, with respect to the third point alone, the motion is granted as to all moving parties except Frazier and Copeland, and as to them the motion is denied.

. Section 962 provides in part: “ This Code applies to criminal actions, and to all other proceedings in criminal cases which are herein provided for, from the time when it takes effect ”.

. See Rossbach, J., “Go-Go-Go Justice”, Bar Bulletin, N. Y. County Lawyers Assn., Yol. 21, No. 1, 1963.

. This would apply to Criminal Court Judges as well since the consolidation of the courts and the elimination of Magistrates in New York City on September 1, 1962.