TAYLOR, J.
 

 Defendant, Thomas Montoya, appeals from a judgment of conviction entered on a jury verdict finding him guilty of robbery (Pen. Code, § 211), arguing that he was arrested pursuant to an invalid warrant that did not contain any description of the person to be seized and was therefore in violation of article I, section 19, of the state Constitution, as well as the Fourth Amendment of the Constitution of the United States. Defendant also contends that the warrant did not state the time of its issuance, as required by section 815 of the Penal Code.
 

 As no contentions are raised concerning the sufficiency of the evidence, a brief statement of the pertinent facts will suffice. The victim, Arnold Matasci, lived on the 5th floor of a Geary Street apartment house. He had been visited on several occasions by a Rosalie Apodaca (hereafter Rosalie), a prostitute whom he knew by the name of Mary and who had given him her telephone number. About two weeks before the incident here in question, Rosalie and a girl friend were at Matasci’s
 
 *135
 
 apartment: At that time (observed by both girls), he gave them money from a large roll of bills in his trousers pocket.
 

 About 10 o’clock on the evening of May 8, 1966, Matasci received a telephone call from Rosalie, had a brief conversation with her and then went back to bed. About 12:30 a.m. on May 9, Rosalie called again and indicated that she wanted to talk to him about something right away. Since the apartment building entrance was locked at 10 ¡15 p.m., Matasci went downstairs to let her in and heard several voices. As he opened the door for Rosalie, a man, later identified as defendant, entered behind her, hurried to the stairway and proceeded upstairs as if he lived in the building. Matasci and Rosalie took the elevator to his 5th floor apartment and after a short conversation, Rosalie left.
 

 Matasci had just taken
 
 off
 
 his trousers when there was a knock on his door. When he asked who it was, Rosalie answered that she wanted to use his bathroom. He opened the door to let Rosalie in and saw defendant hurry in behind her. When Matasci asked defendant what he wanted, defendant hit Matasci on the head with a blackjack. Matasci fell to the floor and yelled for help while defendant and Rosalie stomped on him and kicked him. Rosalie then pointed to the victim’s blue trousers. Defendant grabbed for the trousers and ran out the door with Rosalie.
 

 Mrs. Daniels, a neighbor of Matasci’s, heard his cries for help, and when she looked out, a girl and man ran out of his apartment and passed by her on the way to the stairway. The man had dark hair, a mustache and dark clothes, and held something grey in his hands as he ran. Matasci emerged from his apartment bleeding. As he had inadvertently locked himself out, he had to go to the manager’s apartment to call the police. Matasci reported that $1,400 to $1,500 in currency, most of it in $100 bills, as well as a promissory note and keys, had been taken. He described defendant as about 35 years old, approximately 5' 10" tall, a Latin type with dark hair and big mustache, wearing dark clothes and weighing about 170 pounds. Matasci also gave the police the telephone number that Rosalie had given to him earlier.
 

 About 9 that same morning, Sergeant Ellis of the San Francisco Police Department, telephoned Matasci to verify Rosalie’s telephone number and then found that it was registered to a Rose Costa at an Oakland address. Ellis obtained a photograph of Rosalie and submitted it along with a group of other pictures to Matasci. After Matasci identified Rosalie, Ellis
 
 *136
 
 asked the Oakland Police Department to arrest her. A little later, he obtained an arrest warrant for Rosalie Apodaea, and a John Doe warrant describing defendant as a “white male adult, 30 to 35 years
 
 5'
 
 10", 175 lbs. dark hair, medium build.” He also sent a teletype to the Oakland Police Department informing them of the warrants and the physical descriptions furnished by Matasci and Mrs. Daniels.
 

 After receiving the teletype, Officer Sehwedhelm of the Oakland Police Department, went to the address listed about 4 p.m. Rosalie, another woman and defendant were there. Rosalie was arrested as was defendant, since he matched the teletype description of a white male adult, Latin type with a large mustache. After the arrest, defendant was taken to the Oakland city jail and booked about 6:30 p.m. When Sergeant Ellis arrived about an hour later to take him back to San Francisco, he noted that defendant no longer had the large mustache mentioned in both Mrs. Daniels’ and Matasci’s descriptions. Officer Sehwedhelm indicated that defendant had a mustache at the time of his arrest and booking, but it had been removed by the time defendant was turned over to Ellis. That same evening, Ellis returned defendant to San Francisco where he was identified in a lineup as the robber by Matasci. A search of defendant after his arrest revealed two $100 bills.
 

 Defendant presented no evidence in his behalf, except the arrest warrant dated May 10,1966, signed by Judge Glickfeld. In view of the prima facie showing thus made that the warrant was issued the day after the arrest, the court heard additional testimony out of the presence of the jury. The prosecution introduced: a copy of the teletype dated May 10, 1966; the testimony of Sergeant Ellis that although the warrant signed on May 10 did not show the precise time of day when it was issued nor could he recall the exact time when it was signed, he would never send a teletype indicating that warrants for arrest had been obtained unless that was in fact true; and the testimony of Officer Sehwedhelm that he did not arrest defendant until after he received the teletype of May 10, 1966, stating that the warrants of arrest were outstanding.
 

 The court found that the teletype was sent to the Oakland Police Department on May 10, about 1:45 p.m., received there between that time and 3 p.m., and that defendant was arrested about 10 minutes to, 4 on the afternoon of May 10; that Officer Ellis.’, testimony that the teletype was not sent before the warrants .were actually obtained was trúe. Accordingly,- the court denied the:defense motion to exclude all evidence.
 

 
 *137
 
 The contention on appeal is that the motion to exclude' all of the prosecution’s evidence should have been granted. Defendant argues that the arrest warrant was invalid as it failed to meet the requirements for particularity in describing the person to be seized, as prescribed in article I, section 19 of the state Constitution, as well as the Fourth Amendment of the United States Constitution, and further failed to state the time of its issuance as required by section 815 of the Penal Code.
 

 Before discussing the validity of the warrant, we note that a conviction will not be reversed simply because a defendant was illegally arrested or subjected to an illegal search or seizure
 
 (People
 
 v.
 
 Charles,
 
 66 Cal.2d 330, 332 [57 Cal.Rptr. 745, 425 P.2d 545];
 
 People
 
 v.
 
 Gaines,
 
 247 Cal.App.2d 141-147 [55 Cal.Rptr. 283] ;
 
 People
 
 v.
 
 Valenti,
 
 49 Cal.2d 199, 203 [316 P.2d 633].) Evidence obtained by unconstitutional means is inadmissible and if such evidence is received at the trial and effects a miscarriage of justice, a judgment of conviction will be reversed on appeal
 
 (People
 
 v.
 
 Tarantino,
 
 45 Cal.2d 590, 595, 597 [290 P.2d 505].) However, a defendant does not gain immunity from punishment for an offense for which he was unlawfully arrested
 
 (People
 
 v.
 
 Gaines, supra,
 
 p. 147).
 

 The record indicates that the only evidence here obtained as a direct result of the arrest was the two $100 bills taken from defendant. In view of the testimony and identification of defendant by both the victim and Mrs. Daniels, the $100 bills played a very insignificant part in defendant’s conviction. Thus, even if the arrest and the subsequent search were illegal, the introduction of this evidence was harmless beyond a reasonable doubt
 
 (Chapman
 
 v.
 
 California,
 
 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]).
 

 Defendant first argues that the warrant violates article I, section 19 of the state Constitution, which provides, so far as pertinent: “. . .no warrant shall issue, but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized. ’ ’ This provision, with two slight and wholly unimportant verbal differences, is identical with the Fourth Amendment to the United States Constitution, and like the Fourth Amendment, applies to warrants of arrest as well as search warrants
 
 (In re Schaefer,
 
 134 Cal.App. 498, 499 [25 P.2d 490]). The warrant here described the person to be seized as ‘ ‘ John Doe. white male adult, 30 to 35 years, 5' 10" 175 lbs. dark hair, medium build. ”
 
 *138
 
 Defendant argues that the warrant is void because the description is general and did not contain any information by which he could be identified with reasonable certainty. The People, with commendable objectivity, concede that a warrant which merely identifies a defendant by the use of a fictitious name without any description whatsoever is void
 
 (West
 
 v.
 
 Cabell,
 
 153 U.S. 78 [38 L.Ed. 643, 14 S.Ct. 752];
 
 In re Schaefer, supra.)
 
 They argue, however, that a warrant using “any name” is authorized by section 815 of the Penal Code (set forth below)
 
 [1]
 
 and, in the alternative, that the description here was sufficient to meet the constitutional standards. The question is one of first impression on both points.
 

 As to section 815 of the Penal Code,
 
 Elliott
 
 v.
 
 Haskins,
 
 20 Cal.App.2d 591 [67 P.2d 698], supports the People’s position. However, that case is of doubtful authority since it ignored the pertinent constitutional provisions and was decided before
 
 Mapp
 
 v.
 
 Ohio,
 
 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], established that the Fourth Amendment of the United States Constitution applied to the states.
 
 [2]
 

 The weight of authority holds that to meet the constitutional requirements, a “John Doe” warrant must describe the person to be seized with reasonable particularity. The warrant should contain sufficient information to permit his identification with reasonable certainty
 
 (West
 
 v.
 
 Cabell, supra; Commonwealth
 
 v.
 
 Crotty,
 
 92 (10 Allen) Mass. 403 [87 Am.Dec. 669].) This may be done by stating his occupation, his personal appearance, peculiarities, place of residence or other means of identification
 
 (Blocker
 
 v.
 
 Clark
 
 (1906) 126 Ga. 484 [54 S.E. 1022, 1023, 8 Ann.Cas. 31, 7 L.R.A. N.S. 268].) Where a name that would reasonably identify the subject to be arrested cannot be provided, then some other means reasonable to the circumstances must be used to assist in the identification of the subject of the warrant
 
 (United States
 
 v.
 
 Swanner
 
 (E.D. Tenn. 1964) 237 F.Supp. 69, 71).
 

 We hold, therefore, that when read with the constitutional provisions, section 815 does not obviate the necessity of
 
 *139
 
 describing the person to be arrested.
 
 [3]
 
 If a fictitious name is used the warrant should also contain sufficient descriptive material to indicate with reasonable particularity the identification of the person whose arrest is ordered (see Fricke, Cal. Criminal Procedure (5th ed. 1959) p. 23; cf.
 
 Bean
 
 v.
 
 Best
 
 (1958) 77 S.D. 433 [93 N.W.2d 403].)
 

 We turn, therefore, to the question of whether the description of defendant as a “white male adult, 30 to 35 years, 5’ 10” 175 lbs. dark hair, medium build” meets the constitutional requirement of “reasonable particularity.” There is very little authority on this question, as most of the cases deal with search warrants. However, a useful analogy is presented by the cases relating to search warrants issued pursuant to statutes similar to section 1525 of the Penal Code,
 
 [4]
 
 which authorizes a warrant for the search of the person.
 

 The authorities agree that the constitutional requirement is not met where only characteristics of age and race are mentioned.
 
 [5]
 
 Although the warrant here also indicated that the person to be seized had dark hair, we think it was nevertheless too general a description. It could be applied to a great number of persons in a city the size of Oakland. Accordingly, we hold that the description of defendant in the warrant did not meet the constitutional requirement, and the warrant was void for that reason. In view of this conclusion, we need not discuss defendant’s other contention that the warrant was also invalid as it failed to state the time of its issuance as
 
 *140
 
 required by the second sentence of section 815, quoted above (fn. 1).
 

 It does not follow, however, that defendant’s arrest was unlawful simply because the warrant underlying it was void. As indicated in the statement of facts, prior to the arrest, the Oakland police had the teletype referring to the warrants. Section 850 of the Penal Code provides that a teletype of a warrant has the same effect as the original. In this case, however, the teletype from the San Francisco Police Department contained more information than the warrant.. It contained the additional facts that defendant had a large mustache, was of a Latin type, as well as the address of Rosalie who had been previously identified by the victim. Information provided by one police department to another is presumed to be reliable
 
 (People
 
 v.
 
 Schellin,
 
 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593].) Thus, when the Oakland officers found defendant fitting the teletyped description at Rosalie’s, they were presented with a state of facts that would lead a reasonable person to conclude that defendant should be held to answer. It follows that the Oakland officers here had sufficient probable cause for the arrest of defendant even without the warrant
 
 (People
 
 v.
 
 Tillman,
 
 238 Cal.App.2d 134, 139 [47 Cal.Rptr. 614];
 
 United States
 
 v.
 
 Swanner, supra,
 
 pp. 72-73). His arrest and the subsequent search were lawful, and the two $100 bills were properly introduced into evidence.
 

 The judgment of conviction is affirmed.
 

 Shoemaker, P. J., and Agee, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied December 13, 1967.
 

 [1]
 

 Penal Code section 815:
 
 “A
 
 warrant of arrest must specify the name of the defendant or, if it is unknown to the magistrate, judge or justice, the defendant may be designated therein by any name. It must also state the time of issuing it, and the city and county, county, city, town or township where it is issued and be signed by the magistrate, judge or justice issuing it with the title of his office. ’ ’
 

 [2]
 

 The case has been widely criticized (11 So.Cal. L.Rev., 520; 15 So.Cal. L.Rev., 142).
 

 [3]
 

 As with affidavits for search warrants, federal standards apply since the constitutional provisions apply to both kinds of warrants.
 

 [4]
 

 Penal Code section 1525: “A search-warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched.” Oddly, the arrest warrant statutes (Pen. Code, §§ 813-815) contain no similar language.
 

 [5]
 

 In Dow v. State 207 Md. 80 [113 A.2d 423, 49 A.L.R.2d 1205],
 
 Wilson
 
 v.
 
 State,
 
 200 Md. 187 [88 A.2d 564], and
 
 Giordano
 
 v.
 
 State,
 
 203 Md. 174 [100 A.2d 31], the race, age, height and weight descriptions were held sufficient where accompanied by an indication that the person to be arrested could be identified by the arresting officer. However, in
 
 United States
 
 v.
 
 Swanner, supra,
 
 it was held that the subjective knowledge or intention of the executing officer lends no support to the warrant and that its validity must be tested from the identifying information on its face.
 

 In
 
 Martini
 
 v.
 
 State,
 
 200 Md. 609 [92 A.2d 456], a description referring to “a white man, 25 years of age,” was held insufficient as the court concluded there must be in the city about 18,000 persons who answered that description.
 

 In
 
 United States
 
 v.
 
 Doe,
 
 127 F. 982, a warrant referring to John Doe, a Chinese person whose true name is unknown, was held to be an insufficient description.
 
 Bean
 
 v.
 
 Best, supra,
 
 is to the same effect.