[No. 6537-5-III. Division Three. June 18, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. ROLLIE M., *Appellant*.

56

*Sharon Carberry,* for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Steven Keller, Deputy,* for respondent.

GREEN, C.J.—Rollie M., a juvenile, appeals his conviction of possession of a controlled substance in violation of RCW 69.50.401. The issue is whether the search of Rollie was valid. We reverse.

The facts are undisputed. On February 10, 1984, at 3:32 p.m., police officers and a sheriff's detective executed a search warrant at a residence in Yakima. The warrant authorized a search of the residence and "search the person(s) of *John Doe* who is known to be in the vicinity of the above described premises . . ." On entering the house, the officers encountered Rollie's mother and her 10–year–old son. The house was searched and contraband was found in the northeast bedroom and in a purse located in the front room. At 4:35 p.m., after the contraband had been located and seized, Rollie arrived at the house. The trial court found:

> He was met as he came to the door by Officer Jim Heintz of the Yakima Police Department. Officer Heintz knew the defendant from a prior recent contact. Officer Heintz knew the defendant to be a resident of . . . the premises being searched. The officer, however, wanted to deter-

mine the identity of the defendant, specifically as to his true name because the officer was aware that the defendant had an alias. The officer also wanted to check the defendant's wallet for the presence of controlled substances. The officer, in his experience and training, knew that controlled substances were often secreted in wallets.

Prior to the defendant's arrival at the residence, . . . the defendant's mother had admitted to Sgt. Moon that she owned the contraband, i.e. controlled substances that had been found in the residence. The officers also secured papers evidencing dominion and control to [Rollie's mother] from various locations in the residence, including the front room and the northeast bedroom.

Prior to Officer Heintz' search of the defendant, it was first determined that the defendant was in fact a resident of the house. Identification was secured from his wallet. The defendant was not asked to identify himself. The officer took the wallet from the defendant's pocket. Officer Jim Heintz had some indication (from non–reliable sources) that the defendant was associated with possessing and using controlled substances. The wallet was not secured because it was thought to be a weapon.

Rollie's wallet contained three LSD blotter papers.

The juvenile court commissioner concluded the officers had probable cause to believe Rollie was in constructive possession of controlled substances when he entered the house and that they could seize and search his wallet in conformity with the search warrant. The Superior Court, in its memorandum opinion on Rollie's motion for revision, rejected the theory the search of Rollie was "lawful incident to an arrest" but held

since the warrant authorized a search of persons and since the officers knew that the defendant was a resident, that he was of an age known to use drugs, that he was known to the officer to have used drugs, he comes within the scope of the authorization of the warrant.

Rollie contends the search of his person was invalid because the underlying affidavit supporting the warrant did not contain probable cause for a search of any person, it merely stated that marijuana had been seen on the premises within the past 36 hours. He argues the John Doe lan-

guage in the warrant lacked the constitutionally required factual basis and was overly broad in its scope and therefore the evidence seized from his person should have been suppressed. We agree.

■ The fourth amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing* the place to be searched, and *the persons* or things to be seized.

(Italics ours.) This amendment not only guarantees that prior to the search of a person a magistrate must determine that probable cause exists for the search, but also requires the warrant to particularly describe the place, *person,* or thing to be searched. *State v. Worth,* 37 Wn. App. 889, 892, 683 P.2d 622 (1984); *see also Kuehn v. Renton Sch. Dist. 403,* 103 Wn.2d 594, 599, 694 P.2d 1078 (1985). CrR 2.3(c) provides in part:

> If the court finds that probable cause for the issuance of a warrant exists, it shall issue a warrant or direct an individual whom it authorizes for such purpose to affix the court's signature to a warrant *identifying the* property or *person* and *naming or describing the person,* place or thing *to be searched.*

(Italics ours.)

The validity of a warrant commanding the search of an individual depends essentially upon whether it describes the individual to be searched with such particularity he may be identified with reasonable certainty. Annot., *Sufficiency of Description in Warrant of Person To Be Searched,* 49 A.L.R.2d 1209, 1210 (1956). While our State has not directly confronted the issue raised here,[1] other

---

[1]Although there are several Washington cases which involve search warrants and seizures of individuals in the execution of warrants, none specifically deal with the issue presented here. In those cases, the warrant either mentioned no individuals by name or as "John Doe", *see State v. Broadnax,* 98 Wn.2d 289, 654 P.2d 96 (1982); *Tacoma v. Mundell,* 6 Wn. App. 673, 495 P.2d 682 (1972), or spe-

jurisdictions have held "John Doe" warrants without any other description of the person to be searched are insufficient and fatally defective. *See Fowler v. State,* 128 Ga. App. 501, 197 S.E.2d 502, *cert. denied,* 414 U.S. 1000, 38 L. Ed. 2d 236, 94 S. Ct. 354 (1973); *People v. Staes,* 92 Ill. App. 2d 156, 235 N.E.2d 882 (1968); *People v. Brown,* 40 Misc. 2d 35, 242 N.Y.S.2d 555 (1963). In *People v. Staes, supra* at 160, the court held: "There can be little doubt that a search warrant for a person must describe the person to be searched as specifically and accurately as that required for the search of a place." We agree.

Where the warrant does not specifically name the person to be searched, then some other means reasonable under the circumstances must be used to assist in identifying the person—either his occupation, personal appearance, peculiarities, or place of residence. *See Gero v. Henault,* 740 F.2d 78 (1st Cir. 1984); *United States v. Mahoney,* 712 F.2d 956

cifically named a particular person to be searched, but the police searched persons other than the one named while executing the warrant, *see State v. Allen,* 93 Wn.2d 170, 606 P.2d 1235 (1980); *State v. Worth, supra.* These cases held the evidence should be suppressed because the person searched was not named or described in the warrant; a specific warrant to search premises could not be converted into a general warrant to conduct a personal search of occupants or other individuals; but the police may conduct a limited weapons search of persons on the premises when such individuals are engaged in suspicious activity. *State v. Broadnax, supra* at 294–95; *State v. Allen, supra* at 173; *State v. Worth, supra* at 893.

In *State v. Huff,* 33 Wn. App. 304, 306, 654 P.2d 1211 (1982), the warrant provided: "Search the premises . . . and to search the person(s) of *John Doe . . .*" At the time the police went to the residence to execute the warrant, they did not know the identity of the occupants. During the search the police found personal papers and documents of Mr. Huff and some contraband. Then Mr. Huff appeared and was searched. Marijuana was found on his person. Mr. Huff argued the search of his person was improper because the warrant did not name him but rather "John Doe". This court held the search of Mr. Huff's person was proper because the personal papers of Mr. Huff's found in the general search indicated Mr. Huff lived at the residence and had constructive control of the places where the contraband was found, thus giving the officers the right to search Mr. Huff incident to a lawful arrest. Here, unlike *Huff,* constructive control of the premises and rooms where the contraband had been found and ownership of the contraband discovered in the general search had already been established in Rollie's mother. Thus the search of Rollie was not incident to a lawful arrest.

(5th Cir. 1983); *United States v. Jarvis*, 560 F.2d 494 (2d Cir. 1977); *Morrison v. Fox*, 483 F. Supp. 390 (W.D. Pa. 1979); *People v. Montoya*, 255 Cal. App. 2d 137, 63 Cal. Rptr. 73, 77 (1967). Here no particularities were given, not even that the "John Doe" resided at the premises described in the warrant. Thus, the search of Rollie's person was improper, and the trial court erred in failing to suppress the evidence seized from his wallet.

Reversed.

McINTURFF and THOMPSON, JJ., concur.