[No. 8214-8-III.   Division Three.   May 12, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. ELIDORO BALADEZ MARTINEZ, *Appellant*.

*Douglas Haynes* and *Schwab, Kurtz & Hurley*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Donald Kresse, Deputy*, for respondent.

GREEN, J.—Elidoro Martinez was charged and convicted of possession of a controlled substance, cocaine.

The sole issue is whether there was a sufficient description of Mr. Martinez in the search warrant to justify the search of his person and his subsequent arrest. We find there was and affirm.

The facts are not in dispute. A reliable informant related to the Yakima Police Department that he had made purchases of cocaine from two Mexican males who lived at a designated address. The informant was requested to obtain their names but was unsuccessful. He provided the following descriptions: "(1) Mexican/Male, 20's, 5'7, med. build blk curly hair. (2) Mexican/Male, 20's, 5'6, heavy build, blk hair". Based on this information submitted by affidavit, a magistrate issued a warrant to search the designated residence and the two described individuals.

When the officers arrived to execute the warrant at approximately 8 a.m. on August 13, 1986, they observed 15 to 20 people at the residence. They decided to delay the search. About 9:30 a.m., they executed the warrant. At that time there were eight people present, two females and six males. Two individuals, including Mr. Martinez, matched the descriptions contained in the warrant. The officers searched the person of Mr. Martinez and found a quantity of cocaine. He was placed under arrest. When the officers asked who lived in the residence, the response was that no one lived there. Mr. Martinez was found in the kitchen and the other person described in the warrant was "just getting up" in the back bedroom.

Mr. Martinez moved to suppress the cocaine on the basis the warrant contained an inadequate description of the persons to be searched. The court denied the motion and following trial to the court on undisputed facts, Mr. Martinez was found guilty.

Mr. Martinez contends the search of his person is invalid because the search warrant neither identified the individuals to be searched by name nor contained an adequate

description of them. He argues the warrant was so vague and minimal that the police could search virtually any average Mexican male who happened to be present when the warrant was executed; therefore, the warrant violated the protections guaranteed by the fourth amendment to the United States Constitution. To the contrary, the State asserts the description of Mr. Martinez, along with the precise location where he could be found, was sufficient. We agree.

The fourth amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

CrR 2.3(c), in part, similarly provides:

> If the court finds that probable cause for the issuance of a warrant exists, it shall issue a warrant or direct an individual whom it authorizes for such purpose to affix the court's signature to a warrant identifying the property *or* person and naming *or* describing the person, place or thing to be searched.

(Italics ours.) Thus, before a search warrant is issued, a magistrate must determine that (1) probable cause exists for the search, and (2) the warrant particularly describes the place, person, or thing to be searched. *State v. Rollie M.,* 41 Wn. App. 55, 58, 701 P.2d 1123 (1985); *see also Kuehn v. Renton Sch. Dist. 403,* 103 Wn.2d 594, 599, 694 P.2d 1078 (1985).

The validity of a warrant authorizing the search of a person depends essentially upon whether it describes that person with such particularity as to be identified with reasonable certainty. Annot., *Sufficiency of Description in Warrant of Person To Be Searched,* 49 A.L.R.2d 1209, 1210 (1956); 2 W. LaFave, *Search and Seizure* § 4.5(e), at 228–29 nn. 101, 103 (1987).

None of the Washington cases cited by the parties involve the type of description with which we are confronted here. Two of the cases involved warrants authorizing the search of "John Doe who is known to be in the vicinity of the above described premises" and were found inadequate. *State v. Douglas S.*, 42 Wn. App. 138, 709 P.2d 817 (1985); *State v. Rollie M., supra.* In the other two cases, one warrant authorized the search of a residence and its owner and the other the search of a residence and certain identified individuals. *State v. Allen*, 93 Wn.2d 170, 606 P.2d 1235 (1980); *State v. Worth*, 37 Wn. App. 889, 683 P.2d 622 (1984). The John Doe warrants were held inadequate and the warrants authorizing the search of the owner of a residence and identified individuals were held to be valid, but did not extend to others found in the residence. While these cited cases do not apply here, in *State v. Rollie M., supra* at 59–60, we observed:

> Where the warrant does not specifically name the person to be searched, *then some other means reasonable under the circumstances must be used to assist in identifying the person—either his* occupation, *personal appearance, peculiarities, or place of residence. See Gero v. Henault*, 740 F.2d 78 (1st Cir. 1984); *United States v. Mahoney*, 712 F.2d 956 (5th Cir. 1983); *United States v. Jarvis*, 560 F.2d 494 (2d Cir. 1977); *Morrison v. Fox*, 483 F. Supp. 390 (W.D. Pa. 1979); *People v. Montoya*, 255 Cal. App. 2d 137, 63 Cal. Rptr. 73, 77 (1967).

(Italics ours.)

Here, the warrants authorized the search of "(1) Mex/ male 20's, 5'8, med build, curly blk hair. (2) Mex/male 20's 5'6, heavy build, blk hair." When the officers executed the warrant, only two individuals in the residence met these descriptions. One of them was Mr. Martinez, who was found in the kitchen. The fact the given descriptions might have applied to other Mexican males in the Yakima Valley, as argued by Mr. Martinez, is a factor to be considered, but is of no moment here; the warrant limited the search to described persons who lived at a particular address. As

limited, we find the descriptions adequate and reasonable.[1]
Affirmed.

McINTURFF, C.J., concurs.

THOMPSON, J. (dissenting)—I dissent. I would hold the
warrant as used to authorize the search of Mr. Martinez
violated the protections guaranteed by the fourth amend-
ment to the United States Constitution and article 1, sec-
tion 7 of the Washington State Constitution. I do not
believe the general descriptions given were "other means
*reasonable under the circumstances . . .*" (italics mine),
*State v. Rollie M.,* 41 Wn. App. 55, 59, 701 P.2d 1123
(1985).

A search warrant for a person must meet the same speci-
ficity and accuracy tests as required for search of a place.
*Rollie M.,* at 59. Guidance as to what a defendant must
show in order to attack the validity of a search warrant's
description of a place to be searched is given in *State v.
Fisher,* 96 Wn.2d 962, 967–68, 639 P.2d 743, *cert. denied,*
457 U.S. 1137 (1982). The problem with particularity of
description in *Fisher* was the address. There, the court
upheld the warrant, noting:

> There is nothing in the record which would show ade-
> quate precautions were not taken except the allegation
> that there are four other Madisons in Pierce County.
> There is no showing there was a similar residence that
> could have been mistaken at the alternative addresses
> nor any attempt by defendants to show that the officers

---

[1]Although the following cases cited by the State are factually distinguishable,
descriptions similar to those involved here were upheld. *See United States v.
Espinosa,* 827 F.2d 604 (9th Cir. 1987) (a male Latin, name unknown, referred to
in affidavit as John Doe #1, described as male Latin, approximately 35 years of
age, 5′8″/5′10″, approximately 200 pounds with black hair and full black beard);
*United States v. Ferrone,* 438 F.2d 381, 389 (3d Cir.) ("John Doe, a white male
with black wavy hair and stocky build observed using the telephone in Apartment
4–C, 1806 Patricia Lane, East McKeesport, Pennsylvania"), *cert. denied,* 402 U.S.
1008 (1971); *State v. Malave,* 127 N.J. Super. 151, 153, 316 A.2d 706 (1974) ("a
Puerto Rican male in his forties about 5′6 in height medium build who lives at
said address").

did not know the house in question or if the affiant was among the searching officers. In other words, the defendants made no showing that a mistaken search could have occurred. . . . on its face it appears that a reasonable person could ascertain the Madison location.

*Fisher,* at 967–68. Because no evidence was offered to indicate a mistake *could* have occurred, even with reasonable efforts by police, the warrant was deemed valid.

Here, on the other hand, the defendant has definitely undermined assurances that a mistaken search could not have occurred:[2] (1) The officers waited for an hour to allow approximately 10 people to leave the building before searching for the Mexican males described in the warrant; several of those who left were Hispanic. There was no determination made that the two males described had not already left when the search occurred. (2) Given the number of Hispanics at the home when the officers approached and the police officers' uncertainty whether any of these individuals met the informant's description, there was an adequate showing Hispanics meeting the general description left between the first approach and the search. (3) The affiant officer did not base the physical description of the Mexican males on his *own* observation, but upon a general description by an informant; prior to executing the warrant, nothing in the record would indicate the affiant officer had ever seen the two described suspects. (4) The house was a place where there were usually a lot of people coming and going. (5) The amount of clothing and personal articles found in the residence indicated at best the individuals were not long–term residents of the house, nor in fact was anyone. Thus, this is not a situation where the warrant

---

[2]The situation that presented itself when the officers arrived at the house made it virtually impossible for them to determine who the warrant authorized them to search.

could be construed to authorize the search of the owners or renters of a normally occupied residence.

The majority cites three cases in a footnote which contain broad descriptions of the person to be searched which, on their face, look as general as here. However, the facts of each make them not only distinguishable, but highlight the deficiencies of the search warrant in this case. In *United States v. Espinosa,* 827 F.2d 604 (9th Cir. 1987), the affiant officer had personal knowledge of Mr. Espinosa's description, having conducted extensive surveillance of his movements; he knew his man, but not his name. Thus, there were ample assurances the officers would be searching the right person.

Likewise, in *State v. Malave,* 127 N.J. Super. 151, 316 A.2d 706, 708 (1974), the search warrant was upheld because the affiant officer who executed the search based the description contained in the affidavit and the search warrant partly on his personal knowledge of the defendant, having had the person specifically pointed out by the informer and having placed him under surveillance for several days.

Finally, in *United States v. Ferrone,* 438 F.2d 381 (3d Cir.), *cert. denied,* 402 U.S. 1008 (1971), the officers had independently verified the described individual's link to the residence by observing him at the apartment, apparently doing the act which they were investigating, *i.e.,* taking bets on a telephone.

There is no question a general description would be sufficient if it is coupled with the fact an officer with personal knowledge of that individual's identity will be at the search scene to identify the subject of the warrant. This is not the case here. The descriptions given were too vague and were an unreasonable means to identify the sought–after individuals, under the circumstances of this case. I would

reverse the trial court's denial of Mr. Martinez' motion to suppress.

Review denied by Supreme Court September 1, 1988.