840 P.2d 1061

**STATE of Arizona, Appellant,**

v.

**James HAMILTON, Appellee.**

**1 CA–CR 91–1013.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 17, 1992.

Reconsideration Denied Nov. 19, 1992.

John Verkamp, Coconino County Atty., by Richard S. Vihel, Deputy County Atty., Flagstaff, for appellant.

Robert Lippman, Flagstaff, for appellee.

## OPINION

CLABORNE, Presiding Judge.

The state appeals from the trial court's granting of appellee's motion to suppress evidence allegedly seized from his person. For the reasons below, we affirm.

On September 28, 1989, Randy Weems ("Weems"), an officer with the Flagstaff Police Department, obtained a search warrant for the premises at 36 Brannen Circle in Flagstaff, Arizona, and for the persons of Carmen Johns, Jo Hamilton, "Iceman, a black male" and "Jim, a black male". This warrant was issued on the basis of an affidavit by Weems which stated that he had "information from a confidential and reliable informant that # 36 Brannen Circle ... was dealing crack cocaine." The affidavit went on to refer to the fourth suspect as "Jim" and later as "Jimbob," but the description ended there. During the early morning of September 28, 1989, the police executed the search warrant and found four adults at the residence. These adults were Carmen Johns, Joe Hamilton, Ron Harlin, who was wearing a necklace with the word "ice" on it, and James Lawn, the

appellee.[1] It should be said that although appellee was at the residence when it was searched, this was not his permanent residence. Further, the search warrant did not describe the appellee as permanently residing at the premises to be searched. It only indicated that there was probable cause to search the person of "Jim, a black male," and the premises of # 36 Brannen Circle. The police allegedly found zigzag cigarette rolling papers and money on appellee which a confidential informant had used to buy crack cocaine the day before. Appellee was charged with possession of a dangerous drug for sale, a class two felony, and possession of drug paraphernalia, a class six felony. After an evidentiary hearing, the trial court ordered that evidence seized from appellee's person be suppressed. The state thereafter dismissed the charges against appellee without prejudice and brought this appeal of the trial court's order of suppression.

■ A search warrant must describe the person to be searched in adequate detail to identify him with reasonable certainty. *State v. Albert*, 115 Ariz. 354, 355, 565 P.2d 534, 535 (App.1977). A short summary of the reasons behind this rule is helpful to our analysis. The fourth amendment to the U.S. Constitution was designed to protect against unreasonable search and seizures.[2] The need for this protection started when the early American colonists were subjected to patently unfair searches based upon mere suspicion. Nelson B. Lasson, *The History and Development of the Fourth Amendment to the United States Constitution* (1937). Before the formation of the United States, in England and in France, general warrants were issued which allowed the police to arrest the author, printer, and publisher of any writings to which the government objected. There was no need to show probable cause to get a general warrant, suspicion of guilt was sufficient. No geographical limits were needed. *Id.* at 13–50. On this side of the Atlantic another warrant, the writ of assistance, was being used. This warrant was also issued on mere suspicion, did not require the name of a specific person to be searched and allowed unlimited boundaries on the searches. This warrant was created to help detect and capture smugglers of molasses which was used to make rum. *Id.* at 51–78. James Madison drafted the fourth amendment to prevent similar tools from being used to invade the privacy of citizens in the newly created United States. *Id.* at 79–105.

■ It is clear that the purpose of the fourth amendment is to prevent arbitrary intrusions. *See Trupiano v. United States*, 334 U.S. 699, 709, 68 S.Ct. 1229, 1234, 92 L.Ed. 1663 (1948). This purpose was well-articulated in *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), when the court said that the fourth amendment "prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches." *Id.* at 84, 107 S.Ct. at 1016. In observing this purpose the courts have invalidated warrants which purport to authorize searches of undescribed, unidentified persons at a particular location. *See People v. Simmons*, 210 Ill.App.3d 692, 155 Ill.Dec. 410, 569 N.E.2d 591 (1991); *State v. Rollie M.*, 41 Wash.App. 55, 701 P.2d 1123 (1985). Therefore, the question here is whether the description of "Jim, a black male" at 36 Brannen Circle in Flagstaff, Arizona, described the appellee with sufficient detail. The trial court found that the warrant did not.

■ This court will not disturb the ruling of the trial court on a motion to suppress absent clear and manifest error.

---

1. The appellee's legal name appears to be James Hamilton, but he had adopted his stepfather's surname: Lawn.

2. The fourth amendment states:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by an Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized. U.S. CONST. amend. IV.

*State v. Stanley*, 167 Ariz. 519, 523, 809 P.2d 944, 948 (1991); *State v. Rivera*, 152 Ariz. 507, 733 P.2d 1090 (1987). In reviewing the trial court's decision, the facts and evidence are viewed in a light most favorable to sustaining the trial court. *State v. Warren*, 124 Ariz. 279, 603 P.2d 550 (App. 1979). We are unable to say that the ruling of the trial court was clear and manifest error. The state cites cases dealing with the specificity in description required in search warrants. These cases are all distinguishable. In the Arizona case the state cites, *State v. Albert*, 115 Ariz. at 355, 565 P.2d at 535, the search warrant included a physical description of the suspect that this warrant, except for describing the suspect's skin color, completely lacked. In *United States v. Espinosa*, 827 F.2d 604 (9th Cir.1987), *cert. denied* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); *United States v. Ferrone*, 438 F.2d 381 (3rd Cir.1971), *cert. denied* 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971) and *State v. Martinez,*, 51 Wash.App. 397, 753 P.2d 1011 (1988), similar physical descriptions were included in the warrant and the affiants in those cases had seen the suspects before and therefore were able to aid in identifying them during the search.

*State v. Malave*, 127 N.J.Super. 151, 316 A.2d 706 (1974), set out personal identification as an important factor in determining the validity of warrants which do not otherwise fully identify the suspects to be searched. Here, the affiant had not previously seen appellee and could not aid in identifying him when the search was made. *State v. Martinez*, 51 Wash.App. 397, 753 P.2d 1011, is distinguishable because of the detailed physical description of the suspect.

In *Rollie M.*, 701 P.2d 1123, the court was faced with analyzing the validity of a warrant similar to the one in this case. That warrant authorized the search of "John Doe who is known to be in the vicinity of the above described premises," but it gave no physical description. *Id.* at 1123. The court held that:

> Where the warrant does not specifically name the person to be searched, then some other means reasonable under the circumstances must be used to assist in

identifying the person—either his occupation, personal appearance, peculiarities, or place of residence.... Here no particularities were given, not even that "John Doe" resided at the premises described in the warrant. Thus, the search of Rollie's person was improper and the trial court erred in failing to suppress the evidence....

*Id.* at 1125 (citations omitted).

In the present case there was absolutely no means of identifying the person to be searched like height, weight, eye color, type of hair, unusual markings, permanent residence, occupation or personal appearance. To authorize the search of a black male named "Jim" is simply not enough. *See People v. Simmons*, 155 Ill.Dec. 410, 569 N.E.2d 591.

We affirm.

FIDEL, C.J., and GARBARINO, J., concur.