[No. 6298-4-II. Division Two. June 26, 1984.]

THE STATE OF WASHINGTON, *Appellant,* v. PENNY JEAN WORTH, *Respondent.*

*Arthur D. Curtis, Prosecuting Attorney,* and *James P. Swanger, Deputy,* for appellant.

*Roberta H. Rons,* for respondent.

PETRIE, J.—Plaintiff, State of Washington, appeals an order dismissing an information which charged defendant, Penny Jean Worth, with the crime of possession of a controlled substance, cocaine. The order of dismissal was entered after the suppression hearing court granted defendant's motion that a "bindle" of cocaine found in her purse be suppressed as a nonconsensual general exploratory search. We affirm.

Police found the bindle in the inner compartment of defendant Worth's purse while executing a warrant authorizing a search of the premises and person of John Folkerts. The sole issue on appeal is whether that search warrant comprehended within its scope, Worth's purse, which was resting against the chair in which she was seated during the search of Folkerts' house. The State contends that the police had authority to search Worth's purse because (1) Worth was a co–occupant of Folkerts' house and was on the premises during the search, and (2) her purse was merely another household item and a likely receptacle for the objects described in the warrant. We disagree.

An investigation of a series of pharmacy robberies in the Vancouver area resulted in the issuance of warrants authorizing the arrest of John Folkerts and a search of his premises and his person. The search warrant at issue authorized the seizure of items related to the pharmacy robberies including clothing, cosmetics, weapons and narcotics. The validity of the two warrants is conceded. Although Worth

and her son lived with Folkerts, the search warrant was not issued on the basis of any information about Penny Jean Worth.

At approximately 7:30 p.m. on November 23, 1981, uniformed officers of the Vancouver Police Department, including Officer Spencer and Sergeant Brown, executed the search warrant at issue. When the officers arrived at John Folkerts' house, Penny Worth, her son, and John Folkerts were sitting in the living room. After announcing their presence, Sergeant Brown served the search warrant and informed Folkerts of the arrest warrant. Officers entered the house and led Folkerts to a back bedroom for questioning.

Worth remained in the living room with her son and Officer Spencer. While in the living room with Worth, Officer Spencer searched Worth's purse, which rested against her chair, for weapons. He opened a tin canister inside her purse and found white tablets. Worth told him that the tablets contained caffeine. Subsequent testing verified Worth's statement. About 20 minutes after the police arrived, they arrested Folkerts and transported him to jail. Several officers, including Officer Spencer and Sergeant Brown, remained at the house and continued the search.

Thereafter, Sergeant Brown led Ms. Worth into a back bedroom for questioning and took along her purse. Then Sergeant Brown told Worth that possession of the white tablets constituted a felony and urged her to inform on Folkerts to avoid prosecution. When she refused, he emptied her purse on the bed, rifled through its contents, and searched its inner compartments. He found the bindle of cocaine inside one of the inner compartments.

We consider now the sole issue before the court—whether Sergeant Brown's search (the second search) of Worth's purse constituted an impermissible search of her person. Although we have some doubts as to the validity of the first search, nevertheless, we shall assume, for the sake of this appeal only, that the first search was valid. The trial court did not find that the initial search of Worth's purse

was invalid. Nor has the respondent contested the validity of the first search on cross appeal. Therefore, we decline to consider that issue. However, we hold that the second search of Worth's purse was an impermissible search of her person which violated her Fourth Amendment rights.

The Fourth Amendment guarantees that before a search of an individual's person or effects can be commenced, a magistrate must make a prior determination that probable cause exists for the search. Moreover, the Fourth Amendment requires that a search warrant must particularly describe the place, person, or things to be searched. *State v. Eisele,* 9 Wn. App. 174, 511 P.2d 1368 (1973); CrR 2.3(c); *Marron v. United States,* 275 U.S. 192, 72 L. Ed. 231, 48 S. Ct. 74 (1927).

It is also well settled that a warrant authorizing a search of the premises justifies a search of personal effects of the owner found therein which are plausible repositories for the objects specified in the warrant. *State v. White,* 13 Wn. App. 949, 538 P.2d 860 (1975); 2 W. LaFave, *Search and Seizure* § 4.10 (1978). However, a specific warrant to search premises cannot be converted into a general warrant to conduct a personal search of occupants and other individuals found at the site. *Tacoma v. Mundell,* 6 Wn. App. 673, 495 P.2d 682 (1972). *Michigan v. Summers,* 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981) clearly establishes that a premises warrant merely gives law enforcement officials permission to *detain* occupants while they conduct the search. *See State v. Broadnax,* 98 Wn.2d 289, 654 P.2d 96 (1982).

Here, then, the warrant authorizing the search of Folkerts' house, in which Worth happened to reside, did not give the police the authority to conduct the second search of Worth's purse. The warrant at issue authorized the search of only Folkerts' house and Folkerts' person. Officials merely had the authority to detain Worth while they searched the house. *See Michigan v. Summers, supra.*

The State erroneously contends on the basis of *State v. Halverson,* 21 Wn. App. 35, 584 P.2d 408 (1978), that the

search of Worth's purse was permissible. *Halverson* held that authorities are permitted to conduct a limited weapons search of persons on the premises *when such individuals are engaged in suspicious activities.* Because there is no evidence that Worth was behaving suspiciously and, further, that the search was obviously more extensive than a mere search for weapons, *Halverson* is inapposite to the case at bench.

Moreover, it was apparent to officers conducting the search that Worth's purse was not just another household item which police could search by virtue of their warrant to search the premises of Folkerts' house. Because Worth's purse rested against the chair on which she was seated, it was clear that she owned the purse and sought to maintain its privacy. It was an extension of her person. There was no circumstance which gave the police the license to embark on a more extensive search of Worth's person.

The case at bench would present no problem had Worth been holding her purse. Personal effects worn or held typically fall outside of the ambit of a warrant to search the premises. *State v. Biggs,* 16 Wn. App. 221, 556 P.2d 247 (1976); 2 W. LaFave, *Search and Seizure* § 4.10 (1970); *United States v. Micheli,* 487 F.2d 429 (1st Cir. 1973); *United States v. Teller,* 397 F.2d 494 (7th Cir.), *cert. denied,* 393 U.S. 937 (1968).

We do not believe that the purpose of the Fourth Amendment is furthered by making its application hinge on whether an individual happens to be holding or wearing such a personal item as a purse when a search is under way. *See, e.g.,* 2 W. LaFave, *Search and Seizure* § 4.10 (1978); *United States v. Micheli, supra; Commonwealth v. Platou,* 455 Pa. 258, 312 A.2d 29 (1973), *cert. denied,* 417 U.S. 976 (1974). A narrow focus on whether a person is holding or wearing a personal item would tend to undercut the purpose of the Fourth Amendment and leave vulnerable readily recognizable personal effects, such as Worth's purse, which an individual has under his control and seeks to preserve as private. In the case at bench the officers did readily

recognize the purse belonged to Ms. Worth and asked her consent to search it. The court found, however, that consent was not given, and the State does not challenge that finding.

The warrant authorizing the search of Folkerts' person and house gave authorities no permission to search Worth's person. The magistrate made no prior determination of probable cause to search Worth's person; neither the authorities who sought the warrant nor the magistrate who issued the warrant knew that Worth resided with Folkerts. Thus, the search warrant and supporting affidavits contain no reference to Worth. Therefore, because the instant search was contrary to the specific guaranties of the Fourth Amendment, the trial court properly granted defendant's suppression motion. The prosecution concedes that, without the evidence seized, it had no valid case against Ms. Worth.

Judgment of dismissal affirmed.

PETRICH, C.J., and REED, J., concur.