[Nos. 26180-1-I; 26181-9-I.   Division One.   December 31, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. DEBRA YVONNE LEE, *Defendant*, ROBERT JAMES HILL, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT JAMES HILL, *Appellant*.

*James R. Short,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Sally Olsen, Deputy,* for respondent.

PEKELIS, J. — Robert Hill appeals his convictions on two separate charges of violation of the Uniform Controlled Substances Act. The cases were consolidated for trial, and the convictions were consolidated for appeal. In his appeal from King County cause 89-1-04078-2, Hill contends that the trial court erred in failing to suppress evidence obtained when an officer searched his pants, which he was not wearing at the time. We reverse.[1]

---

[1] As for Hill's appeal from the second conviction, at oral argument counsel conceded that our decision in *State v. Williams,* 62 Wn. App. 748, 815 P.2d 825

While searching a house pursuant to a premises warrant, Officer Ronald Martin entered a bedroom and encountered defendant Hill standing at the foot of a bed, naked. Hill had already been handcuffed by other officers before Officer Martin arrived. A partly clad female, Debra Lee, was on the bed. Officer Martin had entered the room to make sure the occupants were secured and to remove them to an area that had already been searched for contraband.

Officer Martin asked Hill where his clothes were so that Hill could put them on before being taken out of the bedroom. Hill gestured toward a pair of pants across the room on the floor. Officer Martin initially patted down the pants but did not feel any weapons. He then carefully inspected the pants, looking for identification, contraband, or weapons. He testified that he used a "specific technique" to search the pockets, pulling them out slowly "because of possible needles or razor blades." Officer Martin saw what he recognized as fragments of rock cocaine and removed them before handing the pants to Hill.[2] Officer Martin testified that there was nothing specific about Mr. Hill or "the situation" to make him concerned about his safety. Rather, he did not hand the pants to Hill immediately because of general concern about officer safety and because "the purpose of the search warrant is to search for contraband."

The trial court denied Hill's motion to suppress, finding as an undisputed fact that, although it was not clear whether defendant's ownership of the pants was obvious to the officer before he searched the pants, the pants were "not obviously associated with the defendant." CrR 3.6 certificate para. 1. The court concluded that the officer could search the pants before handing them to Hill because they were properly within the scope of the search warrant and Hill did not appear to the officer "to be a mere visitor; by appearing

---

(1991), *review denied*, 118 Wn.2d 1019 (1992) controls his assignment of error and forecloses his appeal. Accordingly, we affirm the conviction in cause 89-1-04396-0.

[2]The fragments were subsequently tested and confirmed as cocaine.

naked in the room he evinced more of a connection with the premises than a mere visitor." CrR 3.6 certificate, conclusions as to the admissibility of evidence, para. 3(b). The court also concluded that the officer's concern about razor blades and needles "was not unreasonable". Hill was found guilty of possession of cocaine in violation of the Uniform Controlled Substances Act.

Hill appeals. He contends that his pants were not within the permissible scope of the search warrant, arguing that the search of his personal belongings during execution of the warrant was a search of his "person" for purposes of the Fourth Amendment.

The warrant in this case authorized the search of the house in which Hill was found for "cocaine, and other controlled substances, narcotics paraphernalia, materials used in the packaging of controlled substances, records of dominion and control over the premise, money from the sale of controlled substances, firearms, papers of narcotics sales and customers." There is no indication that the warrant was issued on the basis of any information about occupants of the premises or Hill in particular.

In general, a warrant authorizing a search of a premises justifies a search of the occupant's personal effects that are plausible repositories for the objects specified in the warrant. *State v. White*, 13 Wn. App. 949, 538 P.2d 860 (1975). However, a warrant to search premises does not authorize officers to conduct a personal search of individuals found at the site but not described in the warrant. *State v. Worth*, 37 Wn. App. 889, 892, 683 P.2d 622 (1984); *State v. Biggs*, 16 Wn. App. 221, 224, 556 P.2d 247 (1976), *review denied*, 88 Wn.2d 1007 (1977). Personal effects worn or held also fall outside of the ambit of a warrant to search premises. *Worth*, at 893. Although a premises warrant gives law enforcement officials authority to detain occupants while they conduct the search, a search of an individual's person requires additional "independent factors" tying the

individual "to the illegal activities being investigated." *State v. Broadnax*, 98 Wn.2d 289, 300-04, 654 P.2d 96 (1982).

Had Hill been wearing his pants when the officers rushed in, the rules enunciated in *Worth* and *Broadnax* would unquestionably apply to establish a Fourth Amendment violation. In this case, however, the State argues that the pants could be searched because, from the officers' perspective, they were a mere household item and a likely receptacle for the contraband described in the warrant.

Subject to the scope of the warrant, the police are entitled to assume that objects within the premises that are capable of containing the sought contraband are lawfully subject to search as part of a premises warrant. *See* 2 W. LaFave, *Search and Seizure* § 4.10(b), at 320 (2d ed. 1987). However, since the officers in this case had notice that the pants belonged to Hill, this case is controlled by *State v. Worth, supra.*

In *Worth*, officers executed a warrant authorizing a search of the premises and person of John Folkerts for items related to pharmacy robberies, including clothing, cosmetics, weapons, and narcotics. While on the premises, the officers searched the purse of the defendant, Penny Jean Worth, who lived with Mr. Folkerts in the house. When the police encountered Ms. Worth, she was sitting in the living room, her purse resting against her chair. The searching officer found cocaine in the purse, and Worth was convicted of possession.

The Court of Appeals upheld the suppression of the cocaine, ruling that the search of Worth's purse constituted an impermissible search of her person that violated her Fourth Amendment rights. The court explained that it was apparent to the searching officer that Worth's purse "was not just another household item which police could search by virtue of their warrant . . .. Because Worth's purse rested against the chair on which she was seated, it was clear that she owned the purse and sought to maintain its privacy. It

was an extension of her person." *Worth*, at 893. The court applied Fourth Amendment protections to "readily recognizable personal effects . . . which an individual has under his control and seeks to preserve as private." 37 Wn. App. at 893.

As in *Worth*, the defendant in this case was not named in the warrant, and the officers knew that the pants belonged to him *before* the search. Initially, unlike Worth's purse, Hill's pants were across the room from him and, as the trial court found, "not obviously associated with defendant." However, when the officer asked Hill where his clothes were, and Hill identified his pants, it became clear to the officer that the pants were his. In fact, the officer carefully searched the pants *because* he was about to restore them to Hill. At that point, the officer could no longer consider the pants "just another household item."[3]

In assessing the scope of a premises warrant, the *Worth* court refused to adopt a per se rule narrowly focusing on whether a person is holding or wearing an item such as a purse when a search is underway, for to do so would "undercut the purpose of the Fourth Amendment and leave vulnerable readily recognizable personal effects". 37 Wn. App. at 893. Similarly, we decline to premise a person's Fourth Amendment protections on whether he or she happens to be clothed when police officers arrive. We hold, therefore, that upon notice to the officer that the pants were Hill's, the pants were not within the scope of the warrant.

The State attempts to vindicate the search on the grounds that the officers had no notice that Hill was a visitor. Thus, the State argues, the officers were entitled to search him as an "occupant". We believe that this case does not turn on the

---

[3]Hence, the State's reliance on *State v. Biggs, supra,* and *State v. White, supra,* is misplaced. In *Biggs,* the defendant exposed his jacket to a search under a warrant when he departed from the premises and left it behind. 16 Wn. App. at 224-25. In *White,* there was no indication that the defendant had her purse under her control or sought to preserve it as private when it was located on the top of a dresser in the bedroom. 13 Wn. App. at 949-50. By contrast, Hill identified his pants so that he could put them on.

occupant/visitor distinction urged by the State. In *Worth* the defendant was clearly more than a mere visitor; she lived in the house with her son. 37 Wn. App. at 891. Moreover, even assuming Hill was an "occupant", the State cites no authority for such an intrusive invasion of an occupant's person, and we are aware of none. In fact, the Supreme Court in *Broadnax* counseled otherwise, observing that "while occupants of private residences may be 'seized' while a proper search of the premises is conducted, any search of those occupants or others on the premises" must meet the standards of *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979). *Broadnax*, at 300 (citing *Michigan v. Summers*, 452 U.S. 692, 695 n.4, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981)). That is, a search must be justified by a reasonable belief that the individual is armed and dangerous or independent probable cause to search. *See* 98 Wn.2d at 295. The record in this case demonstrates neither.

Finally, the State attempts to justify the search as necessary for officer protection. However, the one case cited by the State in support of this argument, *State v. Lomax*, 24 Wn. App. 541, 603 P.2d 1267 (1979), is plainly distinguishable. In *Lomax*, upon breaking down the door to a residence, the police observed defendant with her hand in her pocket. The court held that this provided the officers with a reasonable belief that defendant might be armed and justified a patdown search for weapons. 24 Wn. App. at 544. In this case, the officer did not testify to any belief that weapons might be in the pants pockets. In fact, the officer testified he had no specific safety concern. Thus, although a patdown might well be justified in these unusual circumstances, once the officer did pat down the pants and felt nothing, he had no reason, and therefore no authority, to search further. *See Sibron v. New York*, 392 U.S. 40, 64, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968). It follows, therefore, that the officer's search of the contents of the pockets was constitutionally impermissible.[4]

---

[4] There is nothing in this record indicating that Officer Martin had any reasonable suspicion that Hill possessed needles or razor blades. Hence, his use of a

We conclude that the search of Hill's pants violated his Fourth Amendment rights and that the trial court should have granted Hill's motion to suppress. Because we reverse on these grounds, we need not address the additional arguments advanced by Hill.

Reversed as to cause 89-1-04078-2; affirmed as to cause 89-1-04396-0.

FORREST and BAKER, JJ., concur.

Review granted at 121 Wn.2d 1015 (1993).

---

"special technique" to search for them was unjustified. *Cf. State v. Harris*, 66 Wn. App. 636, 639, 642, 833 P.2d 402 (1992) (in justifying strip search, the searching officer testified at the suppression hearing that in his experience gang members often taped razor blades to their skin). Moreover, since the search into Hill's pockets was effected without prior justification, the State's reliance on the plain view exception also fails. *See, e.g., State v. Lair*, 95 Wn.2d 706, 714, 630 P.2d 427 (1981) (setting forth elements of plain view).