# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47756-4-II |
| Respondent, | |
| v. | |
| TAMARA CHURCHILL, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Tamara Churchill appeals her conviction for possession of methamphetamine. We conclude the trial court did not err by denying Churchill's motion to suppress and decline to review her unpreserved legal financial obligations (LFO) claim. We affirm.

## FACTS

On December 5, 2014, Bremerton police officers executed a search warrant at Anthony Anderson's residence in connection with a drug investigation. The search warrant authorized the police to search the entire apartment for items associated with drug use and drug dealing. The search warrant only named Anderson. Police found five females inside the apartment. Four women followed the police officers' instructions to go outside. One woman, later identified as Churchill, remained lying across a couch. The first officer to enter the apartment saw Churchill sit up when the door opened, look out the door, lay back down, and pretend to sleep.

The officers detained the four women outside the apartment. Churchill was instructed to show her hands. The officers continued to instruct Churchill to leave the apartment but she remained prone with one hand out of sight, and continued to feign sleep. Officers discussed using a taser. When the officers approached Churchill, she quickly stood up. The officers then detained her and escorted her outside. Officers conducted a search of the apartment.

One officer discovered a purse on the couch, closest to where Churchill's feet had been. At the time, the officer did not know the purse belonged to Churchill because there were "numerous items—bags, luggage, backpacks, all kinds of items like that—that were scattered throughout the house." Report of Proceedings (RP) (Mar. 30, 2015) at 36. The officer believed there were approximately ten purses recovered from the apartment, but only one from the couch. The purse was open and a small cigarette pouch was visible on top. The officer picked up the pouch and found methamphetamine inside.

He went outside and asked who owned the purse. No one responded. The officer then continued to search the purse. Inside it, he found a glass methamphetamine pipe, a baggie containing what appeared to be methamphetamine, and Churchill's identification.

The State charged Churchill with possession of methamphetamine. Pretrial, Churchill filed a motion to suppress the evidence obtained from her purse. She argued the officer knew the warrant did not cover searching the purse. After hearing testimony from two officers and argument from both parties, the court denied the motion to suppress. The trial court signed written findings of fact and conclusions of law as agreed to by the parties.

In finding I, the trial court found Churchill was present during execution of the search warrant and the warrant authorized the police to search the house for items associated with drug use and drug dealing involving only Anderson. In finding II, the court found five women were

present, including Churchill. It found that Churchill stayed on the couch pretending to be asleep, the purse was at the other end of the seven- to eight-foot couch, and there were numerous other bags, purses, and luggage in the apartment. Also, when Churchill heard mention of a taser, she complied with the officers' commands and was taken out of the apartment. In finding III, the court stated, "Given that five women were in a small apartment, and that [the officer] did not know where the women were positioned before police entered the apartment, [the officer] was unsure who owned the purse that was on the couch." Clerk's Papers (CP) at 85. It found that the officer assumed the purse belonged to one of the women, took it outside to ask, but nobody claimed ownership.

From these findings, the court concluded,

[T]he purse was not closely associated with [Churchill] or immediately recognizable as [her]'s based on the following factors: 1) there were four other women in the small living room, 2) the living room contained numerous purses, bags, and luggage, 3) the couch was 6'-7' wide and the purse was on the opposite end of the couch as [Churchill], 4) Officers did not know where the other women were located when the initial announcement regarding the search warrant was made, 5) the defendant did not take any steps to preserve the purse as private, 6) the defendant did not claim ownership of the purse, 7) there was no way for [the officer] to know which female the purse belonged to. The only factor within [Churchill's] favor was her physical proximity to the purse. Given all the other factors, this factor is not enough to make the leap that [the officer] could have readily recognized the purse as belonging to [Churchill].

CP at 86.

The case proceeded to trial and the jury found Churchill guilty. The trial court sentenced Churchill to 60 days of confinement. During sentencing, Churchill told the court she previously had a job that she lost after a previous conviction. She also said that she wanted to continue working. The court asked Churchill, "Do you believe you'll be able to make payments towards your [LFOs]?" RP (June 5, 2015) at 11. She answered that she would have lost her job by the time the jail released her. The court asked if it gave Churchill six months after she got out to start

3

making payments if that would be enough and she said, "I hope so." RP (June 5, 2015) at 12. The court found that "based on what [it had] in front of [it]," Churchill had the present ability to pay LFOs. RP (June 5, 2015) at 12. It imposed $3,735 in discretionary LFOs and ordered Churchill to pay "$25 a month beginning six months, or 180 days, after she was released from custody." RP (June 5, 2015) at 12. Churchill did not object. Churchill appeals.

ANALYSIS

I. UNLAWFUL SEARCH

Churchill argues the trial court erred by denying her motion to suppress. We disagree.

We review a trial court's denial of a suppression motion in two parts. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). We review whether the trial court's findings of fact are supported by substantial evidence and whether the findings support the court's conclusions of law. *Lohr*, 164 Wn. App. at 414. We review the trial court's conclusions of law de novo. *Lohr*, 164 Wn. App. at 414.

Churchill argues the trial court erred by admitting the drug evidence found in her purse in violation of the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution. Churchill contends that because she was not named in the search warrant and because the purse was closely associated and readily identified as her own, the police should not have searched it. She asserts the officer could not have reasonably believed the purse belonged to someone else.

The Fourth Amendment protects against unlawful search and seizure and article I, section 7 of the Washington State Constitution protects against unlawful government intrusions into private affairs. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). The state constitution may provide greater protection to individual privacy rights. *State v. Jones*, 146 Wn.2d 328, 332,

45 P.3d 1062 (2002). A warrant to search specific premises cannot be converted into a general warrant to conduct a personal search of all occupants and other individuals found there. *State v. Worth*, 37 Wn. App. 889, 892, 683 P.2d 622 (1984).

Churchill argues that the officer had no authority to search her purse because she was "not named in [the] search warrant," and it was "readily apparent to the [officer] that the purse belonged to [her]." Br. of Appellant at 7, 9. "[A] premises warrant does not authorize an officer to conduct a personal search of individuals found at the premises or a search of the personal effects that individuals are wearing or holding." *Lohr*, 164 Wn. App. at 423. "Fourth Amendment protections extend to 'readily recognizable personal effects . . . which an individual has under his [or her] control and seeks to preserve as private.'" *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994) (quoting *Worth*, 37 Wn. App. at 893). The individual does not need to wear or hold the item to fall within this protection. *Worth*, 37 Wn. App. at 893. However, officers with a valid search warrant may search "almost anywhere" for the items authorized in the search warrant. *State v. Lair*, 95 Wn.2d 706, 719, 630 P.2d 427 (1981). "The nature of the items to be seized governs the permissible degree of intensity for the search." *State v. Martines*, 184 Wn.2d 83, 94, 355 P.3d 1111 (2015).

An individual may voluntarily abandon his or her privacy interest. *State v. Evans*, 159 Wn.2d 402, 408, 150 P.3d 105 (2007). Abandonment is not generally recognized where the individual has a privacy interest in the searched area containing the item, but is more often found where the individual has no privacy interest in the area. *Evans*, 159 Wn.2d at 408; *see also State v. Reynolds*, 144 Wn.2d 282, 287-88, 27 P.3d 200 (2001). "Where an item is not clearly connected with an individual, and there is no notice to the police that the individual is a visitor to the premises,

there are no grounds on which the defendant may claim that officers are forbidden to search that item pursuant to a premises warrant." *Hill*, 123 Wn.2d at 648.

Churchill assigns error to the trial court's finding III that the officer was "'unsure who owned the purse that was on the couch.'" Br. of Appellant at 1 (quoting CP at 85). However, Churchill does not argue that substantial evidence does not exist. Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. *Hill*, 123 Wn.2d at 644. We defer to the fact finder on issues conflicting testimony, witness credibility, and persuasiveness of the evidence. *Lohr*, 164 Wn. App. at 414. Unchallenged findings of fact are verities on appeal. *Lohr*, 164 Wn. App. at 414. Churchill does not actually challenge the court's finding with argument and therefore, it is a verity. *Lohr*, 164 Wn. App. at 414. Here, substantial evidence supports the court's finding.

The court found that the search warrant entitled the police to search the entire apartment for items associated with drug use and drug dealing. The purse was on the opposite side of the couch from Churchill's head. The officer assumed the purse belonged to one of the women, took the purse outside, and no one claimed it. The police found numerous other bags, purses, and luggage in the apartment. Additionally, the officer testified at the suppression hearing that he did not know who the purse belonged to because of the way the apartment appeared when the police entered. These findings are unchallenged and are verities on appeal.

Churchill also assigns error to two of the trial court's conclusions of law, to the extent they are considered findings of fact. Specifically, she contests the trial court's conclusions that the purse was not closely associated with or immediately recognizable as Churchill's and that there was no way for the officer to know who the purse belonged to. Conclusions of law are determinations "made by a process of legal reasoning from facts in evidence." *State v. Niedergang*,

43 Wn. App. 656, 658-59, 719 P.2d 576 (1986). These conclusions of law are not findings of fact because they require interpretation of the facts and application of law.

Here, the trial court's findings of fact support its conclusions of law. When the officers executed the search warrant, five women were inside the apartment but the officers did not know where they were located. The purse was on the other end of a large sized couch and inside a living room with numerous purses, bags, and luggage. The officer asked who the purse belonged to and Churchill did not assert her ownership. As a result, before the officer searched the purse and found Churchill's identification, the purse was not clearly connected to her.

Churchill compares her case to *Worth*, 37 Wn. App. at 891, and *Lohr*, 164 Wn. App. at 414. In *Worth*, police searched a woman's purse who was not named in the search warrant. 37 Wn. App. at 891. The purse was leaning against the chair she sat on. Police asked Worth permission to search the purse, demonstrating knowledge that it was her possession. 37 Wn. App. at 891. She declined to give permission. 37 Wn. App. at 891. The court found this search violated her privacy rights. *Worth*, 37 Wn. App. at 893-94. In *Lohr*, police searched the purse of a woman present on the premises, but not named in a search warrant. 164 Wn. App. at 416. The woman asked for her boots and pants which were seven to eight feet away, and near a purse. *Lohr*, 164 Wn. App. at 417. Police asked if the purse belonged to her and she confirmed it did. *Lohr*, 164 Wn. App. at 417. Police searched the purse and the court found the search a violation of her privacy rights. *Lohr*, 164 Wn. App. at 422, 424.

Churchill argues that like these cases, she was on the couch, the purse was the only purse on the couch, and it was near her feet. She further contends that disclaiming ownership did not authorize the police to search it. Both *Worth* and *Lohr* are distinguishable from the facts of Churchill's case. Here, there were five women inside the apartment, ten purses were recovered,

and many more bags were discovered. Nobody asserted ownership of the purse after the police asked who owned it. The trial court properly concluded that under these circumstances, the police could not readily determine the purse belonged to a person who was not subject to the valid search warrant.

II.      LFOs

Churchill argues the trial court erred by imposing LFOs without making an individualized inquiry into her current and future ability to pay. *See State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). She argues that the trial court merely asked if she could get a job and imposed LFOs when she answered that she hoped so. The trial court sentenced Churchill to 60 days of confinement and asked about her future ability for employment. Even so, Churchill did not challenge the court's inquiry or object to the discretionary LFOs in the sentencing court. We decline to consider this unpreserved challenge to discretionary LFOs where the court did make some inquiry. *Blazina*, 182 Wn.2d at 839. Furthermore, generally a trial court must be given the opportunity to correct trial errors and, thus, we will not entertain errors that are not raised in any manner before the trial court. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988). Because the trial court made some inquiry and Churchill did not object to the discretionary LFOs, we decline to consider the argument.[1]

---

[1] In the concluding paragraph of her opening brief, Churchill also asks that "in the event this court affirms [her] conviction and sentence," we order no costs be imposed because she was found indigent at trial and for the purposes of appeal. Br. of Appellant at 19. However, Churchill insufficiently argued this issue in her opening brief, and only argued it in her reply brief. RAP 10.3(a)(6). We do not consider arguments raised for the first time in a reply brief. *State v. Wilson*, 162 Wn. App. 409, 417 n.5, 253 P.3d 1143 (2011); RAP 10.3(c).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Lee, P.J.

Sutton, J.