67 Cal.Rptr.3d 392 (2007)
156 Cal.App.4th 508
The PEOPLE, Plaintiff and Respondent,
v.
Paul Eugene ROBINSON, Defendant and Appellant.
No. C044703.
Court of Appeal of California, Third District.
October 26, 2007.
*394 Cara DeVito, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Bill Lockyer, Attorneys General, Mary Jo Graves, Dane R. Gillette, Chief Assistant Attorneys General, Gerald A. Engler, Senior Assistant Attorney General, Michael Chamberlain, Doris A. Calandra and Enid A. Camps, Deputy Attorneys General, for Plaintiff and Respondent.
CERTIFIED FOR PARTIAL PUBLICATION.[*]
*393 BLEASE, Acting P.J.
In this appeal we hold that the statute of limitations for a sexual offense is satisfied when the prosecution is commenced within the period of limitations by the filing of an arrest warrant predicated upon the identification of the perpetrator by a DNA profile. (See Pen.Code, § 804, subd. (d).)[1]
Defendant Paul Eugene Robinson was convicted by a jury of one count of forcible oral copulation (§ 288a, subd. (c)(2)[2]; Ct. 1), two counts of penetration with a foreign object (§ 289, subd. (a)(1); Cts. 2-3), and *395 two counts of rape (§ 261, subd. (a)(2); Cts. 4-5).[3]
A criminal offense is within the statute of limitations when the prosecution for the offense is commenced within the applicable period of limitations. The "prosecution for an offense is commenced when ... [a]n arrest warrant ... is issued [and] names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint." (§ 804, subd. (d).) The charging provisions permit the use of a fictitious or John Doe name. (See also § 815 [arrest warrant].) However, for constitutional and statutory reasons "a `John Doe' warrant must describe the person to be seized with reasonable particularity.... [¶] ... [A fictitious name] does not obviate the necessity of describing the person to be arrested. If a fictitious name is used the warrant should also contain sufficient descriptive material to indicate with reasonable particularity the identification of the person whose arrest is ordered [Citation]." (People v. Montoya (1967) 255 Cal.App.2d 137, 142-143, 63 Cal.Rptr. 73, fn. omitted, relying on West v. Cabell (1894) 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643; see also Cal. Const., art. I, § 13 ["a warrant may not issue, except on probable cause ... particularly describing the ... persons and things to be seized"]; § 813, subd. (a) [magistrate must find "reasonable ground" to believe defendant committed the offense].)
The offenses in this case occurred on August 25, 1994. On August 21, 2000, four days before the six-year statute of limitations (§ 800) was set to expire, the Sacramento County District Attorney filed a felony complaint against "John Doe, unknown male," describing the defendant by a 13-locus DNA profile developed from semen taken from the victim. The next day, an arrest warrant was issued incorporating the DNA profile. The warrant was executed on September 15, after defendant's name was obtained from a match between the 13-locus DNA profile of the perpetrator and his genetic profile entered into the state's DNA Databank.
On appeal, defendant contends that prosecution of his offenses was not commenced by the issuance of the arrest warrant because the warrant did not satisfy the particularity requirement of section 804, subdivision (d). In the published portion of the appeal we conclude that the DNA profile of the perpetrator of a sexual *396 offense incorporated in an arrest warrant provides the particularity of identification of an offender required by section 804.[4] (People v. Montoya, supra, 255 Cal.App.2d at pp. 142-144, 63 Cal.Rptr. 73.)
We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
In the early morning hours of August 25, 1994, 24-year-old Deborah L., the victim in this case, awoke to find defendant, a man she had never seen before, standing in her bedroom. Hie told her to be quiet and that he was there "to get some pussy." He was wearing garden gloves and holding a kitchen knife. When she started to scream, he called her a "white bitch" and threatened to kill her if she did not shut up.
He climbed on top of the victim and held a knife to her chest, cutting her finger when she attempted to grab it. Defendant then directed the victim to cover her face with a pillow and fondled her breasts, placed his mouth on her vagina, inserted his fingers in her vagina and rectum, and raped her. After losing and then regaining an erection, he raped her a second time, then withdrew his penis, ejaculated on her legs, and rubbed his semen all over her stomach.
When he was finished assaulting the victim, he put the gloves back on, dressed himself, and told her not to look at him or call the police or he would kill her. After he left, she called 911 and reported the attack. The police arrived shortly thereafter and the victim was transported to a medical facility where she was examined and a rape kit prepared. A vaginal swab tested positive for the presence of semen.
A few days later, Detective Willover of the Sacramento City Police Department interviewed the victim. At that time, she described her assailant as a black male adult who "sounded black," was about 25 pounds overweight with a round face, and approximately five feet eight inches tall. She informed Willover that during the attack, the assailant repeatedly told her he was Mexican or Chicano and while she thought he was black, he could have been either a dark Mexican or a light skinned black man.[5]
It was stipulated that defendant's blood was collected prior to September 2000, his DNA was tested and his 13-locus profile was entered into the offender database maintained by the California Department of Justice (DOJ).
In August 2000, Jill Spriggs, Assistant Director of the DOJ Crime Laboratory in Sacramento, developed a DNA profile of the assailant from the vaginal swab of the victim. Spriggs then requested Henry Tom, a DOJ DNA criminalist, to search the DOJ Convicted Offender Databank to determine whether the DNA profile of the assailant matched the DNA profile of any convicted offender in the databank. He entered the DNA profile of the evidentiary sample into the computer, ran a search that compared the profile to the DNA profile of all other entrants in the databank, and obtained a "cold hit," which is a *397 match between the assailant's profile and the profile of a person previously entered into the databank. DOJ records disclosed the matching profile belonged to defendant and Tom sent the information to Spriggs.
After receiving that information, Spriggs conducted an independent DNA analysis using a blood sample obtained from defendant upon his arrest. Spriggs developed his DNA profile, compared it with the DNA profile of the evidentiary sample from the vaginal swab, found the two profiles matched along all 13 loci, and concluded they belonged to the same person.
Spriggs testified that once a profile is developed, a statistical calculation is performed to determine the frequency of that particular genetic profile in a random unrelated population. The probability of a 13-loci match as in this case is one in 650 quadrillion in the African American population, one in six sextillion in the Caucasian population, and One in 33 sextillion in the Hispanic population. There are no reported cases of two people matching at all 13 loci other than identical twins.
Defendant did not take the stand but contested the reliability of the statistical probability evidence. We shall discuss that evidence in more detail as pertinent in the discussion portion of our decision.

DISCUSSION

I.

John Doe/DNA Arrest Warrant
Defendant contends that issuance of a John Doe/DNA arrest warrant failed to toll the statute of limitations and that use of such a warrant to toll the statutory period violates his right to due process.[6]
We set forth the pertinent procedural background before addressing each claim.

A. Procedural Background
The governing period of limitations for the sexual offenses charged in this case is six years. (§ 800.) [7] Since the offenses were committed on August 25, 1994, the period of limitations was set to expire on August 25, 2000.
On August 21, 2000, four days before that expiration date, the Sacramento County District Attorney filed a felony complaint against "John Doe, unknown male," described by a 13-locus DNA profile.[8] The next day, Detective Willover prepared and presented an arrest warrant which incorporated the DNA profile,[9] and *398 a statement of probable cause to Magistrate Jane Ure, who signed it.
Three weeks later, on September 15, 2000, Detective Willover received a message from the Department of Justice DNA Laboratory (DOJ Lab) that there was a cold hit match between the DNA profile obtained from the vaginal swab of the victim and the DNA profile of Paul Eugene Robinson, whose genetic profile had been entered in the state's DNA Databank Program. Willover ran a records check on defendant and determined that he was currently out of custody and on active parole and that there were other outstanding warrants for his arrest. The DNA arrest warrant apparently was amended to insert the defendant's name. It was executed by the arrest of defendant on September 15, 2000. A first amended complaint was filed four days later on September 19, 2000, naming Paul Eugene Robinson as the defendant.
Defendant moved to dismiss the first amended complaint for lack of jurisdiction. The trial court held an evidentiary hearing and denied the motion after finding that a DNA profile is the "most accurate description we have to date" and meets the constitutional and statutory requirements that the person to be arrested be particularly described.

B. Statute of Limitations
Defendant contends the trial court lacked personal jurisdiction over him because the six-year statute of limitations had expired by the time the amended complaint was filed. In his view, issuance of a John Doe arrest warrant with a DNA profile does not validly commence the prosecution because a genetic profile does not particularly describe the person to be arrested and therefore fails to satisfy the statutory and constitutional particularity requirement.
Respondent contends this claim has no merit because a DNA profile is a generally accepted forensic identification tool that satisfies the particularity requirement. We agree with respondent and hold that an arrest warrant, which identifies the person to be arrested for a sexual offense by incorporation of the DNA profile of the assailant, satisfies the statutory particularity requirement of section 804, subdivision (d) read in the light of section 813, subdivision (a) and pertinent constitutional provisions.
We first clarify what is at issue. Defendant contends a John Doe/DNA arrest warrant is insufficient to toll the statute of limitations, (see fn. 6, supra.) He does not claim the warrant is unsupported by probable cause, the warrant* was improperly executed, or that he was improperly arrested because he was not the person described in the warrant. Indeed at the time the warrant was executed, defendant's true name and identity were known to the officers and he was located using traditional methods of identification. Thus, defendant makes no claim that this arrest warrant was invalid on Fourth Amendment grounds. With this in mind we consider his claim.
*399 Defendant appears to argue that the particularity requirement in section 804, subdivision (d), must be read in the light of the federal and state constitutions. With this we agree.
The statute of limitations for the offenses with which defendant was charged is codified in section 800. It provides that "prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense." (Italics added.)
A felony prosecution is "commenced" when any one of the following events occurs: an indictment or information is filed (§ 804, subd. (a)), a ease is certified to the superior court (id., subd. (c)), or as was done in this case, "[a]n arrest warrant or bench warrant is issued, provided the warrant names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint." (Id., subd. (d), italics added.)
With respect to the particularity required for naming the person to be arrested, an arrest warrant may describe the person to be arrested by a fictitious name (§ 815)[10] and, as noted above, must name the defendant with the same degree of particularity required for an indictment, information, or complaint (§ 804, subd. (d)), which may be filed using a fictitious name. (§ 959, subd. 4; Ernst v. Municipal Court of Los Angeles (1980) 104 Cal. App.3d 710, 718, 163 Cal.Rptr. 861.)[11]
However, the constitution and statutory scheme require that "a `John Doe' warrant ... describe the person to be seized with reasonable particularity." (People v. Montoya, supra, 255 Cal.App.2d at p. 142, 63 Cal.Rptr. 73.) A fictitious name is the same as a John Doe name and is insufficient to identify anyone let alone with particularity. Thus, the California Constitution, article I, section 13, provides that "a warrant may not issue, except on probable cause ... particularly describing the ... persons and things to be seized." The Fourth Amendment to the United States Constitution contains a similar particularity requirement. (West v. Cabell, supra, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643; Powe v. City of Chicago (7th Cir. 1981) 664 F.2d 639.) "If a fictitious name is used the warrant should also contain sufficient descriptive material to indicate with reasonable particularity the identification of the person whose arrest is ordered [Citation]." (People v. Montoya, supra, 255 Cal.App.2d at pp. 142-143, 63 Cal. Rptr. 73, relying on West v. Cabell, supra, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 and Cal. Const., art. I, § 13.)
This authority is embodied in the requirements of section 813, that the magistrate shall issue an arrest warrant only if "a [felony] complaint [has been] filed with a magistrate [and] the magistrate is satisfied from the complaint that the offense ... has been committed and that there is reasonable ground to believe that the defendant has committed it ...." (§ 813, subd. (a); italics added.)[12] This procedure *400 guarantees that a neutral judicial officer or body makes a finding of probable cause within the period of limitations. (People v. Angel (1999) 70 Cal.App.4th 1141, 1146, 83 Cal.Rptr.2d 222.)
The length of the period of limitations is a matter for the Legislature's determination and it "could, if it wished, remove the statute of limitations entirely for child sexual abuse offenses, or for any other offense, prodded only that this removal applied to future offenses or to offenses which were not time-barred when the removal was eracted." (People v. Vasquez (2004) 118 Cal.App.4th 501, 505, 13 Cal.Rptr.3d 162.)
Thus, the period of limitations is strictly statutory. Nevertheless, because section 804, read together with section 813, incorporates constitutional principles, we turn for guidance to the cases construing the Fourth Amendment particularity requirement.
The purpose of the constitutional particularity requirement is to avoid general warrants by which anyone may be arrested (West v. Cabell, supra, 153 U.S. at p. 86, 14 S.Ct. at p. 754, 38 L.Ed, at p. 645; In re Application of Schaefer (1933) 134 Cal.App. 498, 499-500, 25 P.2d 490) in order to ensure "`nothing is left to the discretion of the officer executing the warrant.' " (United States v. Hillyard (9th Cir,1982) 677 F.2d 1336, 1339.)
It is therefore well established that an arrest warrant, which merely identifies a defendant solely by use of a fictitious name is void. The warrant must "truly name" the person to be arrested or "describe him sufficiently to identify him." (West v. Cabell supra, 153 U.S. at p. 85, 14 S.Ct. at p. 753, 38 L.Ed, at p. 644; In re Application of Schaefer, supra, 134 Cal. App. at p. 499, 25 P.2d 490.) The test is whether the warrant provides sufficient information to identify the defendant with "reasonable certainty. [Citations.] This may be done by stating his occupation, his personal appearance, peculiarities, place of residence or other means of identification [Citation]." (People v. Montoya, supra, 255 Cal.App.2d at p. 142, 63 Cal.Rptr. 73.) The particularity requirement does not however, demand complete precision. (People v. Amador (2000) 24 Cal.4th 387, 392, 100 Cal.Rptr.2d 617, 9 P.3d 993.)
Applying these principles, we find an arrest warrant, which describes the person to be arrested by his or her DNA profile, more than satisfies the reasonable certain-: ty standard because DNA is the most accurate and reliable means of identifying an individual presently available to law enforcement.
In passing the DNA and Forensic Identification Data Base and Data Bank Act of 1998 (DNA Act or Act) (§ 295 et seq.), the California Legislature found that "(DNA) and forensic identification analysis is a useful law enforcement tool for identifying and prosecuting sexual and violent offenders." (Former § 295, subd. (b)(1) [Stats. 1998, ch. 696, § 2]; see also People v. King (2000) 82 Cal.App.4th 1363, 1378, 99 Cal. Rptr.2d 220 [finding there is no question but that DNA testing provides an efficient means of identification].) Similar findings have been made by all other states and the federal government, which have enacted DNA data base and data bank acts. (Alfaro v. Terhune (2002) 98 Cal.App.4th 492, 505, 120 Cal.Rptr.2d 197; see Annot., Validity, Construction, and Operation of State DNA Database Statutes (2000) 76 A.L.R.5th 239, 252; and see 42 U.S.C. §§ 14131-14134.)
*401 Defendant argues however, that a DNA profile is merely "information about the genetic makeup of a human being; [and] is not an identification of that person" that would enable an officer in the field to execute the warrant based solely on the DNA profile stated in the warrant. We see no legal merit in this argument.
Neither section 804, subdivision (d), section 813, nor the state and federal constitutions specify or limit the manner or criteria for particularly describing a person. All that is required is "reasonable certainty" that the person may be identified. Indeed, defendant concedes that while a DNA profile "may be probative of identity," it is not infallible. But infallibility is not required for issuance of a warrant (People v. Amador, supra, 24 Cal.4th at p. 392, 100 Cal.Rptr.2d 617, 9 P.3d 993) or a charging document. (People v. Erring (1961) 189 Cal.App.2d 283, 290, 11 Cal. Rptr. 203 [two descriptive errors in the indictment do not deprive the court of jurisdiction].)
Nevertheless, in light of the astronomical rarity of an individual's DNA profile in the general population (People v. Johnson (2006) 139 Cal.App.4th 1135, 1153, 43 Cal. Rptr.3d 587) and of defendant's particular 13-locus profile, it cannot be disputed that DNA analysis is as close to an infallible measure of identity as science can presently obtain. Given the mobility of our society, the availability of plastic surgery and other medical procedures and devices that may alter physical characteristics, and the growing problem of identity theft, unlike a person's DNA profile, all other identifying criteria are subject to theft, change, or alteration.
Defendant also contends that for Fourth Amendment purposes, extrinsic evidence cannot be used to make up the deficiencies of an insufficient arrest warrant. This argument is based on the fact an officer in the field cannot execute the warrant by visually identifying a suspect with his DNA profile in hand and must resort to information outside of the warrant.
We disagree. Defendant confuses the requirements for issuance of a warrant with those necessary to execute one. Extrinsic evidence is always necessary to locate the suspect and confirm his identity in order to execute an arrest warrant. (United States v. John Doe (3d Cir.1983) 703 F.2d 745, 748 ["No matter how detailed the written description on a warrant is, extrinsic information will be necessary to execute it"].)
Moreover, at least two courts in other jurisdictions have held that issuance of a John Doe/DNA arrest warrant is sufficient to toll the statute of limitations. In State of Wisconsin v. Dabney (2003) 264 Wis.2d 843, 663 N.W.2d 366 (Dabney), the court ruled that the DNA profile satisfied the reasonable certainty requirement for an arrest warrant in a case charging a sexual assault where the assailant was unknown to the victim and a DNA profile was subsequently developed from semen left by the assailant. Three days before the six-year statute of limitations was set to expire, the state filed a complaint charging "John Doe # 12" with sexual assault. The caption of the complaint included the defendant's DNA profile. The same day, an arrest warrant for John Doe # 12 was also issued. (663 N.W.2d at pp. 369-370.)
Under Wisconsin law, as in California, the statute of limitations is satisfied when the prosecution is commenced within the period of limitations. An action may be commenced by issuing an arrest warrant, which must identify the person to be arrested with "reasonable certainty." (Dabney, supra, 663 N.W.2d at pp. 370-371.) The Wisconsin court concluded, as have we, that "for the purposes of identifying `a particular person' as the defendant, a *402 DNA profile is arguably the most discrete, exclusive means of personal identification possible. `A genetic code describes a person with far greater precision than a physical description or a name.'" (Id. at p. 372; see also State v. Danley (2006) 138 Ohio Misc.2d 1, 5-6, 853 N.E.2d 1224, 1227.)
The court in Dabney, supra, 264 Wis.2d 843, 663 N.W.2d 366, also rejected the argument raised by defendant herein that a DNA profile fails to sufficiently identify the accused because a field officer cannot visually identify the suspect from a DNA profile. Although the court agreed that a police officer with a John Doe/DNA arrest warrant could not walk up to an individual and arrest him solely on the basis of his genetic profile, the court concluded that having to take the extra step of identifying the defendant "is not unique to a warrant based on DNA. No matter how well a warrant describes the individual, extrinsic information is commonly needed to execute it. If a name is given, information to link the name to the physical person must be acquired." (663 N.W.2d at p. 372.)
For these reasons, we hold that an arrest warrant, which describes the person to be arrested by his DNA profile, satisfies the statute of limitations.

C. Due Process
Defendant also contends that using a John Doe/DNA arrest warrant to commence a prosecution circumvents the statute of limitations and therefore violates his rights under the due process clauses of the state and federal constitutions. Respondent argues this claim has no merit because defendant has failed to establish prejudice. We agree with respondent.
The statute of limitations protects criminal defendants during the prearrest and preaccusation stages (United States v. Marion (1971) 404 U.S. 307, 322-323, 30 L.Ed.2d 468, 479-480) while due process protects criminal defendants after the statute of limitations has expired and before the right to a speedy trial has attached, i.e., before the defendant is arrested or a complaint is filed. (People v. Martinez (2000) 22 Cal.4th 750, 765, 767, 94 Cal. Rptr.2d 381, 996 P.2d 32; People v. Catlin (2001) 26 Cal.4th 81, 107, 109 Cal.Rptr.2d 31, 26 P.3d 357.)
To establish a due process violation, defendant must establish (1) the absence of any legitimate reason for delay and (2) prejudice. (People v. Archerd (1970) 3 Cal.3d 615, 640, 91 Cal.Rptr. 397, 477 P.2d 421.) Prejudice may be shown by the loss of a material witness or other missing evidence or by a witness's fading memory caused by the lapse of time. (Ibid.)
Defendant has failed to establish prejudice for the three week delay between August 25, 2000, when the statute of limitations was set to expire and September 15, 2000, the day he was arrested. Instead, he poses a number of hypothetical "what if questions based upon the possibility that an individual with a DNA profile matching the one specified on the warrant may not be found for decades, impairing his ability to establish a defense. We need not address that possibility because it is not tendered by this case. Here, law enforcement officials promptly processed the crime scene the day of the crime, collected evidence, took a vaginal swab from the victim, and developed the assailant's DNA from that evidence within the period of limitations. Since defendant was arrested only three weeks after the period of limitations expired and his sole defense was to contest the reliability of the statistical probability evidence, his ability to defend against the charges was not impaired by the passage of time.
*403 Accordingly, we reject his due process claim.

II.-V.[**]

DISPOSITION
The superior court is directed to correct the abstract of judgment to reflect that defendant was convicted of violating Penal Code section 288a, subdivision (c)(2) and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment of conviction is affirmed.
We concur: HULL and BUTZ, JJ.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Parts II through V of the Discussion.
[1] All further section references are to the Penal Code unless otherwise specified.
[2] The abstract of judgment erroneously designates this offense as a violation of section 288, subdivision (a)(2). We shall order that the abstract of judgment be amended to correct this error.
[3] The jury also found true that defendant used and was armed with a knife during the commission of each offense. (Former §§ 12022, subd. (b)(1) (Stats.1993, ch. 660, § 26; ch. 611, § 30) and 12022.3, subds. (a) and (b) (Stats.1993, ch. 299, § 2).)

By information, defendant was also charged with eight additional counts involving Heather O. for burglary (§ 459), foreign object penetration (§ 289, subd. (a)(1)), oral copulation (§ 288a, subd. (c)(2)), rape (§ 261, subd. (a)(2)), and sexual battery. (§ 243.4, subd. (a).) The jury was unable to reach a verdict on these charges, a mistrial was declared, and the charges were dismissed.
The information also charged defendant with 15 prior conviction enhancements. (§§ 667, subds. (a), (b)-(1), 667.5, subd. (b), and 1170.12.) Although neither party mentions the disposition of these allegations, our review of the record discloses that the trial court impliedly struck them because the underlying convictions were entered after defendant committed the crimes against Deborah L., on the grounds they did not constitute prior convictions for purposes of sentence enhancements. (See People v. Rojas (1988) 206 Cal.App.3d 795, 802, 253 Cal.Rptr. 786 ["to be subject to the five-year enhancement pursuant to section 667, subdivision (a), a defendant's prior serious felony conviction must have occurred before the commission of the present offense"].)
The trial court imposed an aggregate prison term of 65 years after selecting the upper term for all five counts and all five use enhancements. The court stayed imposition of sentence on the remaining enhancements.
[4] In the unpublished portion of the opinion we also reject the defendant's additional claims that the trial court committed reversible error by failing to suppress DNA evidence obtained in violation of his Fourth Amendment rights, admitting expert testimony concerning DNA statistical frequency analysis, and imposing upper terms of imprisonment in violation of his Sixth Amendment right to a jury trial under Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403(hereafter Blakely).
[5] The record shows that defendant is African-American.
[6] The correct contention is that the prosecution was not commenced within the period of limitations. Tolling refers to the extension of the period of limitations for a reason set forth in section 803.
[7] The "prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense." (§ 800.) The maximum sentence for the offenses for which defendant was convicted is eight years. (§ 288a, subd. (c)(2), § 289, subd. (a)(1), § 261, subd. (a)(2), § 264.)
[8] That profile is described as "Short Tandem Repeat (STR) ... (DNA) Profile at the following Genetic Locations, using the COfiler and Profiler Plus Polymerase Chain Reaction (PCR) amplifications kits: D3S1358 (15, 15), D16S539 (9,10), TH01 (7,7), TPOX (6,9) CSF1PO (10,11), D7S820 (8,11) vWa (18,19), FGA (22,24), D8S1179 (12,15), D21S11 (28, 28) D18S51 (20,20), D5S818 (8,13), D13S317 (10,11), with said Genetic Profile being unique, occurring in approximately 1 in 21 sextillion of the Caucasian population, 1 in 650 quadrillion of the African American population, 1 in 420 sextillion of the Hispanic population...."
[9] Defendant's DNA profile was not entered on the face of the warrant because the computer system would not allow that many characters to be entered within the limited space available. However, the Fourth Amendment does not prohibit a warrant from cross-referencing other documents and most Courts of Appeals have held that a court may construe a warrant with reference to a supporting affidavit if the warrant uses appropriate words of incorporation and the affidavit accompanies the warrant. (Groh v. Ramirez (2004) 540 U.S. 551, 557-558, 124 S.Ct. 1284, 1290, 157 L.Ed.2d 1068, 1078; see also People v. MacAvoy (1984) 162 Cal.App.3d 746, 755-756, 209 Cal.Rptr. 34.) The trial court found (1) the warrant appropriately cross-referenced the affidavit and complaint and the affidavit was incorporated by reference into the warrant. On appeal, defendant does not challenge the trial court's factual findings or legal conclusions.
[10] Section 815 states in pertinent part: "A warrant of arrest shall specify the name of the defendant or, if it is unknown to the magistrate, judge, justice, or other issuing authority, the defendant may be designated therein by any name...."
[11] Section 959 states in pertinent part, that "[t]he accusatory pleading is sufficient if it can be understood therefrom: [11] ... 4. That the defendant is named, or if his name is unknown, that he is described by a fictitious name, with a statement that his true name is to the grand jury, district attorney, or complainant, as the case may be, unknown."
[12] The "reasonable certainty" standard is similar to the requirement of section 813, subdivision (a), that "there is reasonable ground to believe that the defendant" committed the offense described in the complaint. (Italics added.)
[**] See footnote *, ante.