Nos. 95,575;
95,613;
95,614;
95,639;
95,640;
95,766

STATE OF KANSAS, *Appellant/Cross-appellee*, v. DOUGLAS S. BELT, *Appellee/Cross-appellant.*
(179 P.3d 443)

Opinion filed March 28, 2008.

*Marc A. Bennett*, special prosecutor, argued the cause, and *Phill Kline* and *Paul J. Morrison*, attorneys general, were with him on the briefs for appellant/cross-appellee.

*Rebecca E. Woodman*, of Kansas Capital Appellate Defender Office, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

BEIER, J.: These consolidated cases test the sufficiency of the DNA descriptions in John Doe warrants arising out of a series of seven sexual assaults committed from 1989 through 1994 in Mc-Pherson, Saline, and Reno counties. Each of the resulting six cases was dismissed in the district court for one or both of two reasons. The State appeals all of the dismissals; and defendant Douglas S. Belt cross-appeals on the one issue decided against him in Mc-Pherson County.

*Factual and Procedural History*

McPherson County

Four cases involving four different victims were filed in McPherson County.

• Case No. 91 CR 3226

Just after midnight on March 25, 1989, A.H. was taking a shower at her home when an unidentified man broke into her home, came into the bathroom, grabbed her, told her he had a knife, and took her to the bedroom. He put duct tape around her head, covering her eyes, and bound her hands with the tape. He performed oral sex on her, vaginally and anally raped her, and then left her bound and blindfolded while he escaped.

On March 13, 1991, a John Doe complaint was filed and an arrest warrant was issued in connection with the A.H. incident. The complaint, in Case No. 91 CR 3226, charged one count of rape, two counts of aggravated sodomy, one count of aggravated burglary, and one count of aggravated kidnapping.

The complaint and warrant identified "John Doe described by deoxyribonucleic (DNA) analysis as LOCI D2S44 and D17S79." The supporting affidavit stated that John Doe was a male, described the crimes reported by A.H., and averred that semen was collected from the crime scene. It also stated that the semen had been sent to the Federal Bureau of Investigation (FBI), where it was analyzed by Special Agent Dwight Adams. Adams reported to the affiant that "the semen donor's DNA LOCI is D2S44 and D17S79" and that "the DNA description would be unique only to the person committing the rape/sodomy against [A.H.]." The affidavit stated that the DNA banding pattern was catalogued in an autoradiograph maintained at the FBI laboratory in Washington, D.C. Neither the complaint, the warrant, nor the supporting affidavit contained any other description of the perpetrator.

• Case No. 91 CR 3355

On the night of September 8, 1989, P.H. was in bed when she heard a noise; she got up and was accosted near her bedroom door by a male, approximately 6'1" tall, who was wearing a mask. He grabbed P.H., threw her on her bed, covered her eyes with duct

tape, and taped her arms together behind her back. He performed oral sex on her and then vaginally raped her. He then inserted his finger in her anus. During these events, she felt a sharp object on her back; at one point, the man said, "Maybe I should just slash your throat and get it over it [*sic*]." While she was still bound and blindfolded, her attacker asked her if she had any money. She told him she had $100 in her purse, which he took. Then he fled.

On September 5, 1991, a John Doe complaint was filed and an arrest warrant was issued in connection with the P.H. incident. The complaint, in Case No. 91 CR 3355, charged one count of rape, two counts of aggravated sodomy, one count of aggravated burglary, one count of aggravated kidnapping, and one count of aggravated robbery.

The complaint and warrant identified "John Doe described by deoxyribonucleic (DNA) analysis as LOCI D2S44 and D17S79." The supporting affidavit stated that John Doe was a male, described the crimes reported by P.H., and averred that semen was collected from the crime scene. The affidavit also stated that the semen had been sent to the FBI where it was analyzed by Special Agent Michael Vick, who reported to the affiant that "the semen donor's DNA LOCI is D2S44 and D17S79" and that "the DNA description would be unique only to the person committing the rape/sodomy against [P.H.]." The affidavit stated that the DNA banding pattern was catalogued in an autoradiograph maintained at the FBI laboratory in Washington, D.C. Neither the complaint, the warrant, nor the supporting affidavit contained any other description beyond the DNA information and the approximate height of the perpetrator.

• Case No. 92 CR 3500

Just before midnight on June 13, 1990, N.B. was grabbed from behind as she passed a spare bedroom in her home. Her male attacker put a knife to her throat and told her to be quiet. He took her to the master bedroom, put duct tape across her eyes, removed her top and bra, placed her arms behind her, and wrapped duct tape around her wrists and forearms. The man performed oral sex on her and then vaginally and anally raped her. He left her bound and blindfolded while he escaped.

On May 22, 1992, a John Doe complaint was filed and an arrest warrant was issued in connection with the N.B. incident. The complaint, in Case No. 92 CR 3500, charged one count of rape, two counts of aggravated criminal sodomy, one count of aggravated burglary, and one count of aggravated kidnapping. An amended complaint was filed May 28, 1992.

The complaints and warrant identified "John Doe described by deoxyribonucleic (DNA) analysis as LOCI D2S44 and D17S79." The supporting affidavit stated that John Doe was a male, described the crimes reported by N.B., and averred that semen was collected from the crime scene. The affidavit also stated that the semen had been sent to the KBI for preliminary analysis by criminalist Kelly Robbins and that it was then forwarded to the FBI. Robbins reported to the affiant that the FBI had reported that the semen donor's DNA LOCI is "D2S44 and D17[S]79" and that "the DNA description would be unique only to the person committing the rape/sodomy against [N.B.]." The affidavit stated that the DNA banding pattern was catalogued in an autoradiograph maintained at the FBI laboratory in Washington, D.C. Neither the complaints, the warrant, nor the supporting affidavit contained any other description of the perpetrator.

• Case No. 93 CR 3682

On March 7, 1991, J.Z. fell asleep in her home. She was awakened early the next morning by a male who had placed his hand and a knife blade against her face. He told her to be quiet, then duct taped her eyes, took off her shirt, and duct taped her wrists. The man vaginally raped her and forced her to perform oral sex on him. He left her bound and blindfolded while he escaped.

On February 11, 1993, a John Doe complaint was filed and an arrest warrant issued in connection with the J.Z. incident. The complaint in Case No. 93 CR 3682 charged one count of rape, one count of aggravated criminal sodomy, one count of aggravated burglary, one count of aggravated kidnapping, and one count of aggravated robbery.

The complaint and warrant identified "John Doe described by deoxyribonucleic (DNA) analysis as LOCI D2S44 and D17S79." The supporting affidavit stated that John Doe was a male, de-

scribed the crimes reported by J.Z., and averred that semen was collected from the crime scene. The affidavit also stated that the semen had been sent to the KBI for preliminary analysis by Robbins, and that it was then forwarded to the FBI. Robbins reported to the affiant that the FBI had reported that the suspect had "the same DNA LOCI of D2[S]44 and D17[S]79" and that "the DNA description would be unique only to the person committing rape and sodomy to victims in previous unsolved rapes in the city of McPherson." The affidavit stated that the DNA banding pattern was catalogued in an autoradiograph maintained at the FBI laboratory in Washington, D.C. Neither the complaints, the warrant, nor the supporting affidavit contained any other description of the perpetrator.

Saline County

One case involving two different victims was filed in Saline County.

On August 26, 1993, P.B. was asleep in her apartment when an unknown male broke in, sat on her, pushed her head into her pillow, told her not to open her eyes, put a knife to her neck, and duct taped her eyes and wrists. The man then raped her vaginally and anally, and forced her to perform oral sex on him. He took $38 from her purse.

On October 5, 1993, J.B. was asleep in her apartment, which was in the same complex as P.B.'s apartment. At some time after midnight, an unknown man woke her, put a knife to her throat, duct taped her eyes and wrists, struck her numerous times, and cut her throat. He then anally raped her. Medical examination also revealed vaginal tears consistent with penetration. The man forced her to perform oral sex on him and performed oral sex on her. He then placed her in a bathtub and washed parts of her and cut her between her breasts.

On July 1, 1997, a John Doe complaint was filed in connection with the P.B. and J.B. incidents. The complaint, in Case No. 97 CR 863, charged rape, aggravated burglary, aggravated kidnapping, two counts of aggravated criminal sodomy, and theft as to P.B.;

and rape, aggravated burglary, three counts of aggravated criminal sodomy, and aggravated kidnapping as to J.B.

The complaint identified "John Doe, D2S44, D10S28, D1S7, D4S139" as its subject, and an arrest warrant was issued. The supporting affidavit described the crimes and stated that semen specimens recovered from both victims had been collected and analyzed by William Hamm of the KBI. The affidavit said Hamm reported that "the donor[']s LOCI is D2S44, D1S7, D10[S]28, D4S139"; that the DNA description would be unique to the person who committed the rapes of P.B. and J.B.; and that the DNA banding pattern was maintained on autoradiographs at the KBI laboratory. Neither the complaint, the warrant, nor the supporting affidavit contained any other description of the perpetrator.

### Reno County

One case involving one victim was filed in Reno County.

On August 17, 1994, J.T. was staying at her daughter's mobile home when a male intruder awoke her at 2:45 a.m. The man told her he had a knife, duct taped her eyes and wrists, and led her to a back bedroom where he raped and sodomized her.

On May 19, 1997, a John Doe complaint was filed and an arrest warrant issued in connection with the J.T. incident. The complaint, in Case No. 97 CR 422, charged one count of rape and one count of aggravated burglary.

The supporting affidavit stated that John Doe was male, described the crimes reported by J.T., and averred that semen was obtained from the crime scene. It stated that a DNA banding pattern was catalogued in autoradiograph by Hamm and that the DNA description maintained at the KBI lab would be unique to the person who committed the rape of J.T. Neither the complaints, the warrant, nor the supporting affidavit contained any other description of the perpetrator.

### Knowledge of Belt's Involvement

Law enforcement's investigation of the A.H. incident, the first crime in McPherson County, led to defendant Belt, who consented to give a blood sample for DNA testing in March 1991. Mislabeling

in the KBI lab resulted in a different individual's DNA being sent to the FBI, and the FBI thus reported inaccurately that Belt's DNA did not match that collected from the A.H., P.H., or J.Z. crime scenes. The authorities were able to determine that the DNA from each of the crime scenes matched one another and, eventually, that collected in the N.B. case.

In 1995 or 1996, the DNA from the unknown serial rapist was entered into the federal Combined DNA Index System (CODIS). The sample in the CODIS database would eventually be matched to a known sample from Belt. Senior Special Agent Ronald Hagen had responded to the scene of the A.H. incident in March 1989 and was involved in all four McPherson County cases as a supervising officer in charge of processing the crime scenes and securing evidence. Hagen supplied the affidavits in support of the original John Doe warrants issued in McPherson County. He also had a major role in the eventual break in the serial rapist investigation. After Belt was arrested in June 2002 for a capital murder in Sedgwick County, Hagen remembered that he had been an early suspect in McPherson County. Hagen sought a warrant for a blood draw from Belt, which resulted in a match to the perpetrator of the seven sexual assaults from the late 1980s and early 1990s.

At this point, Hagen served as the affiant for a master affidavit supporting amended complaints and new warrants, in each of the three counties, which named Belt. The master affidavit included physical descriptions from the victims. In McPherson County's Cases Nos. 91 CR 3226, 91 CR 3355, and 92 CR 3500, involving victims A.H., P.H., and N.B., the State filed amendments on April 21, 2003. The State's amendment in Case No. 93 CR 3682, involving victim J.Z., was filed June 17, 2003. The Saline County complaint in Case No. 97 CR 863, involving victims P.B. and J.B., was amended April 22, 2003. The State amended its Reno County complaint in Case No. 97 CR 422, involving victim J.T., on March 17, 2003; in addition to naming Belt, it added two counts of aggravated sodomy. Hagen eventually testified that he personally executed the new McPherson County warrants by serving them on Belt in the Sedgwick County Jail.

Belt moved to dismiss all of these amended complaints. The first of his motions to come before a district court arose in the four McPherson County cases, heard together by Chief Judge Richard B. Walker on October 4, 2005.

Belt argued that the original John Doe warrants were too vague to meet the identification standards of the Fourth Amendment to the United States Constitution and K.S.A. 22-2304 and, thus could not toll the statutes of limitations applicable to the charged crimes. If the statutes were not tolled, the limitations periods were exceeded; and the cases must be dismissed for lack of jurisdiction.

Belt asserted that the DNA loci set out in the warrants, "D2S44 and D17S79," were shared by every human being; that autoradiographs of specific DNA banding patterns were not attached to the complaints, warrants, or supporting affidavits; and that these documents lacked any other identifying information. Belt also argued that the delay between the filing of the original complaints and his first appearance was presumptively unreasonable and attributable to the State, violating his rights to speedy trial and due process under the Sixth and Fourteenth Amendments to the federal Constitution.

The State responded to Belt's motions to dismiss by arguing generally that a warrant containing a DNA profile identifying a perpetrator was sufficiently specific, that the John Doe warrants in the McPherson County cases met the relevant standard, and that their supporting affidavits cured any vagueness problem by referring to unique catalogued autoradiographs. The State also asserted that there was no unreasonable delay in execution of the arrest warrants, under the circumstances of this case; and that, in any event, any delay had been caused by defendant's efforts to conceal his identity.

At the hearing, Belt introduced testimony from Dr. Dean Stetler, an associate professor in molecular biosciences at the University of Kansas. Stetler testified that the DNA loci listed in the complaints and warrants were common to all humans. In essence, the loci are merely addresses devoid of identifying content: "D" designates human; the following number designates the chromosome observed; "S" stands for single locus, meaning a sequence is found

only one time on the chromosome; and the final number describes the location of the sequence. To have more specifically identified a particular person, Stetler testified, the State should have recited that defendant John Doe's DNA was analyzed at these two loci and then described the information contained at each place.

By way of example, Stetler reviewed a John Doe complaint filed in an unrelated case, which described DNA information contained at 14 different loci. He opined that such a complaint would be sufficient to describe someone who "would be the only person that has ever been on Earth with this profile." A description of the information at only two loci would be unique, Stetler testified, to 1 in 500 persons.

Judge Walker held in favor of the State on the issue of the warrants' particularity, noting Hagen's involvement throughout the investigation of the four incidents. The judge, citing *State v. Kleypas*, 272 Kan. 894, 40 P.3d 139 (2001), concluded that the supporting affidavits combined with the facts that Hagen served the warrants and that he was personally in possession of additional investigation results cured any lack of descriptive information in the warrants themselves. Nevertheless, Judge Walker granted Belt's motions to dismiss the McPherson County cases, ruling that the KBI lab's mislabeling constituted an "act of official negligence" resulting in an "impermissibly excessive" delay that violated Belt's Sixth Amendment right to speedy trial. See *Doggett v. United States*, 505 U.S. 647, 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992), and *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972).

In Saline County, Belt's motion to dismiss was heard by Judge Dan D. Boyer. The testimony presented was substantially similar to that before Judge Walker. Judge Boyer ruled on December 2, 2005, that the John Doe warrant had failed to describe Belt with reasonable certainty, as required by K.S.A. 22-2304; that the autoradiographs referenced in the supporting affidavit were insufficient to cure the warrant's defect; and that the case must be dismissed. In the alternative, Judge Boyer ruled that Belt's speedy trial rights had been violated by delay due to official negligence of the State.

Belt obtained the same result from Judge Steven R. Becker in Reno County. There, the State conceded that its aggravated burglary charge and its two aggravated sodomy charges had been filed after expiration of the applicable statutes of limitations. However, it sought to preserve the remaining rape count for prosecution, relying on a reference in the supporting affidavit to DNA autoradiographs to cure any lack of specificity in the John Doe warrant. Judge Becker rejected this argument, ruling that he lacked jurisdiction because of the warrant's insufficient identification of Belt and the running of the statute of limitations.

*Analysis*

Constitutional arguments and statutory interpretation questions such as those before us in this case are subject to unlimited review on appeal. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003); *Brown v. State*, 261 Kan. 6, 8, 927 P.2d 938 (1996).

K.S.A. 21-3106 sets out the time limits within which a prosecution must be commenced for certain crimes. Although the statute has been modified numerous times over the years in which the crimes at issue occurred, the following rules have been constant: A limitations period starts running when a crime is committed; the period within which a prosecution must be commenced "shall not include any period in which . . . the fact of the crime is concealed"; and "[a] prosecution is commenced when a complaint or information is filed, or an indictment returned, and a warrant thereon is delivered to the sheriff or other officer for execution." K.S.A. 21-3106. No "prosecution shall be deemed to have been commenced if the warrant . . . is not executed without unreasonable delay." K.S.A. 21-3106.

The parties do not debate the content of these rules. The State does, however, briefly invoke concealment, arguing that the statutes of limitations should have been tolled because Belt hid his involvement in the crimes between the times of their commission and the 2003 amendments of the complaints.

This argument lacks merit. In order for concealment to toll a statute of limitations for prosecution, the concealment must be " 'of the fact of a crime' " and " 'must be the result of positive acts

done by the accused and calculated to prevent discovery; mere silence, inaction, or nondisclosure is not concealment.'" *State v. Palmer*, 248 Kan. 681, 683, 810 P.2d 734 (1991); *State v. Watson*, 145 Kan. 792, 67 P.2d 515 (1937). We do not have the necessary "positive acts" by Belt in these cases. Indeed, he consented to a law enforcement request for a blood sample to enable DNA testing in March 1991. It was the KBI's mislabeling, not Belt's effort to evade apprehension, that caused Belt's erroneous elimination as a suspect during the early part of the investigation.

One additional preliminary point bears discussion. Although Judge Boyer dismissed the charges wholesale in the Saline County case, we note statute of limitations distinctions among them. The underlying offenses occurred on August 26 and October 5, 1993. The original John Doe complaint—charging two counts of rape, K.S.A. 1993 Supp. 21-3502(a)(1)(A); two counts of aggravated burglary, K.S.A. 1993 Supp. 21-3716; two counts of aggravated kidnapping, K.S.A. 1993 Supp. 21-3421; five counts of aggravated criminal sodomy, K.S.A. 1993 Supp. 21-3506(a)(3); and one count of theft, K.S.A. 1993 Supp. 21-3701(a)(1)—was filed July 1, 1997. This was well outside the 2-year statute of limitations for theft and burglary. See K.S.A. 1993 Supp. 21-3106(5). Thus, even if the John Doe warrant gave an adequate description of Belt, the only charges remaining for prosecution would be the two counts of rape, five counts of aggravated criminal sodomy, and two counts of aggravated kidnapping, each of which is governed by a 5-year limitations period. K.S.A. 1993 Supp. 21-3106(4).

The primary issue with which we are concerned on this appeal is framed by the State's argument that Judges Boyer and Becker erred in ruling that the John Doe warrants failed to identify Belt sufficiently to toll the applicable statutes of limitations. Belt's only cross-appeal argument is a mirror image, focusing on Judge Walker's ruling against him on this point. We now consider these competing arguments together.

The Fourth Amendment to the United States Constitution protects citizens from violation of their rights to be free from unreasonable searches and seizures, and guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affir-

mation, and particularly describing the . . . [person] to be seized." K.S.A. 22-2304(1) codifies these constitutional standards as to Kansas arrest warrants, providing that such a warrant "shall be signed by the magistrate and shall contain the name of the defendant, or, if his name is unknown, *any name or description by which he can be identified with reasonable certainty.*" (Emphasis added.)

As the State notes, there is precedent to support the contention that a warrant need not provide the name of a suspect, so long as it describes the suspect "sufficiently to identify" him or her. *West v. Cabell*, 153 U.S. 78, 85, 38 L. Ed. 2d 643, 14 S. Ct. 752 (1894). However, the State concedes that the warrants at issue here contained insufficient identifying information. The McPherson County warrants mentioned only DNA loci common to all humans; the Saline County warrants did likewise; the Reno County warrant referred only to a John Doe, listing no loci. The State's position is that references to the existence and location of unique DNA autoradiographs in supporting affidavits cured the warrants' lack-of-particularity problems.

Neither the United States Supreme Court nor this court has yet had occasion to address whether a description of DNA characteristics can fulfill a warrant particularity requirement. The parties thus direct us to cases from two of our sister jurisdictions. See *People v. Robinson*, 156 Cal. App. 4th 508, 67 Cal. Rptr. 3d 392 (2007), *rev. granted* February 13, 2008, S158528; *State v. Davis*, 281 Wis. 2d 118, 698 N.W.2d 823 (2005); *State v. Dabney*, 264 Wis. 2d 843, 663 N.W.2d 366 (2003), *rev. denied* 266 Wis. 2d 63 (2003).

These cases from California and Wisconsin support the proposition that a warrant identifying the person to be arrested for a sexual offense by description of the person's unique DNA profile, or incorporating by reference an affidavit containing such a unique profile, can satisfy constitutional and statutory particularity requirements. See, *e.g.*, K.S.A. 22-2304. We do not disagree with this proposition in the abstract. But this case is concrete. Here, neither the John Doe warrants nor the affidavits supporting them set forth the unique DNA profile of their subject. Previous cases in which

affidavits supplied information missing in warrants simply provide little persuasive authority in these circumstances. See *United States v. Espinosa*, 827 F.2d 604 (9th Cir.), *cert. denied* 485 U.S. 968 (1987) (warrant containing physical description of defendant supported by affidavit describing defendant's residence, his two vehicles, including license plate numbers; information in affidavit properly considered "because the record makes clear that '[1] the affidavit accompanie[d] the warrant, and [2] the warrant use[d] suitable words of reference which incorporate[d] the affidavit therein' "); see also *Kleypas*, 272 Kan. at 926-30 (search warrant list of items to be seized left blank; lack of particularity cured when [1] affidavit contained description of items to be seized; [2] affiant, affidavit present at scene of warrant's execution; and [3] executing officers briefed on items listed in affidavit).

We do not view the warrants' infirmity in this consolidated case as a mere technical irregularity a court can overlook. See K.S.A. 22-2511 ("[n]o search warrant shall be quashed or evidence suppressed because of technical irregularities not affecting the substantial rights of the accused"); *cf. State v. LeFort*, 248 Kan. 332, 335, 806 P.2d 986 (1991) (failure of warrant to specify exact address of residence to be searched mere technical irregularity where application, affidavit contained correct description, affiant executing officer familiar with location); *State v. Holloman*, 240 Kan. 589, 595-96, 731 P.2d 294 (1987) (mere technical irregularity when duplicate of warrant, inventory of items seized given to defendant's mother rather than defendant); *State v. Spaulding*, 239 Kan. 439, 441, 442, 720 P.2d 1047 (1986) (judge's failure to sign warrant mere technical irregularity when probable cause finding made, search warrant intentionally issued); *State v. Jackson*, 226 Kan. 302, 304, 597 P.2d 255 (1979) (failure of the affidavit to specifically allege similarity between circumstances of prior conviction, present crime, inaccurate description of plea to earlier charge mere technical irregularities); *Hearron v. State*, 10 Kan. App. 2d 229, 233-34, 696 P.2d 418 (1985) (failure to forthwith transcribe recorded oral testimony technical irregularity); *State v. Forsyth*, 2 Kan. App. 2d 44, 47, 574 P.2d 241 (1978) (absence of return receipt on search warrant technical irregularity); *State v. Journey*, 1 Kan. App. 2d

150, 151-52, 562 P.2d 138 (1977) (search warrant, sufficient on face, not invalid for lack of jurat signature). The infirmity was a near-complete lack of identifying information.

Moreover, as Belt notes, there was no reason the State could not have particularly described the perpetrator's unique DNA profile in the warrants or their supporting affidavits. The unique profile was known and could have been set out. See, *e.g.*, *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (one factor relevant in appraising specificity whether government could have included particulars at time warrant issued). That genetic information was necessary to provide an evidentiary baseline for probable cause. The fact that it would need to be verified scientifically once defendant was seized did not eliminate the need for this baseline to be drawn in the warrant in the first place. The affidavits' references to unattached, unsworn, extrinsic evidence was insufficient to fulfill the constitutional and statutory requirements and cure the defective warrants. See *United States v. Jarvis*, 560 F.2d 494 (2d Cir. 1977), *cert. denied with dissent* 435 U.S. 934 (1978) ("John Doe" warrant without name, description by which defendant could be identified with reasonable certainty invalid, could not be cured by availability of extrinsic evidence arrest nevertheless because federal agents had probable cause for warrantless arrest).

Because the warrants were invalid, prosecution of Belt in the McPherson, Saline, and Reno Counties did not commence within the applicable statutes of limitations. K.S.A. 1993 Supp. 21-3106. Statutes of limitations are favored in the law and are to be construed liberally in favor of the accused. *State v. Palmer*, 248 Kan. 681, 683, 810 P.2d 734 (1991); *State v. Bentley*, 239 Kan. 334, 336, 721 P.2d 227 (1986); *State v. Mills*, 238 Kan. 189, 190, 707 P.2d 1079 (1985). Exceptions to statutes of limitations are to be construed narrowly. *Palmer*, 248 Kan. at 683; *Bentley*, 239 Kan. at 336; *Mills*, 238 Kan. at 190. The McPherson County dismissal can be affirmed as right for the wrong reason; the Saline and Reno decisions to dismiss relied on the rationale with which we agree.

Because we are compelled to rule against the State on the particularity of the John Doe identification in the original warrants, the State's second issue on appeal contesting the conclusion of

Judge Walker and Judge Boyer that the KBI's mislabeling qualified as official negligence implicating Belt's right to speedy trial is moot.

Affirmed.